SIXTH DIVISION
DECEMBER 23, 2010

Nos. 1-09-0038; 1-09-1892; 1-09-3295;
1-09-3431; 1-10-0070; 1-10-0071 (cons.)

| | | |
|---|---|---|
| TIMOTHY HERLEHY and | ) | Appeal from the |
| MICHAEL HERLEHY, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARIE V. BISTERSKY TRUST DATED | ) | |
| MAY 5, 1989, and ATG TRUST COMPANY, | ) | |
| as Trustee, THE ALZHEIMERS DISEASE | ) | No. 05 CH 15199 |
| AND RELATED DISORDERS ASSOCIATION, | ) | |
| AMERICAN HEART ASSOCIATION, THE | ) | |
| RESPIRATORY HEALTH ASSOCIATION OF | ) | |
| METROPOLITAN CHICAGO (f/k/a The American | ) | |
| Lung Association of Metropolitan Chicago), CATHOLIC | ) | |
| CHARITIES OF THE ARCHDIOCESE OF CHICAGO, | ) | |
| AMERICAN CANCER SOCIETY – ILLINOIS | ) | Honorable |
| DIVISION, THE ILLINOIS ATTORNEY GENERAL | ) | Kathleen M. Pantle, |
| and FIRST NATIONAL BANK OF LAGRANGE, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE ROBERT E. GORDON delivered the judgment of the court, with opinion.
Justices Cahill and McBride concurred in the judgment and opinion.

## OPINION

These consolidated appeals arise from an action for construction of a trust agreement,

breach of a fiduciary duty by a trustee, First National Bank of LaGrange (LaGrange Bank), and a

claim of unjust enrichment on behalf of the trust agreement's residuary beneficiaries, the

Alzheimer's Disease and Related Disorders Association, the American Heart Association, the

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

Respiratory Health Association of Metropolitan Chicago,[1] Catholic Charities of the Archdiocese of Chicago, and American Cancer Society (collectively, the Charities).

Plaintiffs Timothy Herlehy (Timothy) and Michael Herlehy (Michael) filed a second amended complaint alleging that their deceased great-aunt, Marie V. Bistersky (Marie), intended to amend her trust before her death leaving them with a larger share of her trust assets. Plaintiffs allege that LaGrange Bank breached its fiduciary duty by failing to amend Marie's trust agreement pursuant to her directions and, as a result, the Charities will be unjustly enriched to plaintiffs' detriment.

The trial court granted LaGrange Bank's motion to dismiss with prejudice pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2006)), finding that LaGrange Bank had no duty to amend Marie's trust. The trial court also granted the Charities' motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2006)), and denied plaintiffs' cross-motion for summary judgment, finding that there was no valid amendment to Marie's trust and, as a result, the Charities were entitled to their equal portions in the trust's residuary assets. The trial court further denied plaintiffs' motion for reimbursement of attorney fees and found that it lacked jurisdiction over LaGrange Bank's motion for reimbursement for its attorney fees.

In this consolidated appeal, plaintiffs appeal claiming the trial court erred in: (1) granting

---

[1] The Respiratory Health Association of Metropolitan Chicago is frequently known as the American Lung Association of Metropolitan Chicago.

LaGrange Bank's motion to dismiss; (2) granting the Charities motion for summary judgment; and (3) denying their motion for reimbursement for its attorney fees. LaGrange Bank also appeals claiming that the trial court erred in finding that it lacked jurisdiction to consider LaGrange Bank's motion for reimbursement of its attorney fees. We affirm.

BACKGROUND

Timothy originally filed a verified "Complaint for Construction of the Marie V. Bistersky Trust" (original complaint) and alleged as follows: On May 5, 1989, Marie established a written trust agreement, identifying herself as settlor and First Illinois Bank of LaGrange as trustee. Marie's husband predeceased her and she did not have or adopt any children.

Marie amended her trust agreement six times within 10 years. In each amendment, Marie amended the specific beneficiaries and the amount of money they were to receive. She also amended the names of the charities that would receive the residue of the trust. Marie filed her sixth amendment on December 9, 1999, with Bank One Trust Company, NA (Bank One), which was the successor trustee at that time. That amendment provided, in pertinent part, as follows:

"THIRD

SECTION 1: Upon the death of the settlor the trustee shall distribute the trust estate as follows:

(a) Five Thousand Dollars ($5,000.00) to RHONDA BALLA ***;

(b) Fifteen Thousand Dollars ($15,000.00) to VICTORIA WANDOLEWSKI ***;

3

(c) Fifteen Thousand Dollars ($15,000.00) to BONNIE STOLARCZYK ***;

(d) Twenty Thousand Dollars ($20,000.00) to RICHARD BOGACZ ***;

(e) Twenty Thousand Dollars ($20,000.00) to JOSEPH BOGACZ ***;

(f) Two Hundred Thousand Dollars ($200,000.00) to the settlor's grandnephew, TIMOTHY J. HERLEHY ***;

(g) Two Hundred Thousand Dollars ($200,000.00) to the settlor's grandnephew, MICHAEL HERLEHY ***;

(h) The balance of the trust estate shall be distributed in equal shares to the following five (5) charities:

1) ALZHEIMER'S DISEASE AND RELATED DISORDERS ASSOCIATION ***;

2) AMERICAN HEART ASSOCIATION ***;

3) THE AMERICAN LUNG ASSOCIATION OF METROPOLITAN CHICAGO ***;

4) CATHOLIC CHARITIES OF THE ARCHDIOCESE OF CHICAGO ***;

4

5)    AMERICAN CANCER SOCIETY

***."

In formulating an amendment to the trust, the trust agreement provided as follows:

"SEVENTH:  The settlor may at any time or times amend or revoke this agreement in whole or in part by [an] instrument in writing (other than a will) delivered to the trustee. "

In a discovery deposition, Timothy testified that Rhonda Balla was Marie's grand-niece and Richard and Joseph Bogacz were Marie's nephews.  He further testified that Victoria Wandolewski was a close friend of Marie, and Bonnie Stolarczyk was Marie's friend and accountant.

In 2001, Marie was 89 years old and moved to an assisted living facility in LaGrange. Timothy testified that he had a close relationship with Marie, assisted her in relocating to the assisted living facility and with daily tasks and drove her to her doctor's office.  Timothy had a master's degree in finance, and at Marie's request, he reviewed the allocation of her trust assets, and Marie granted him power of attorney to manage her health care needs.

He testified that following her move to the assisted living facility, Marie told him that she did not believe that her trust reflected her wishes and that Bank One's trust officer, Patrice Grant, was not acting in her best interests. Timothy discovered that 90% of Marie's trust assets were invested in stock and told a manager of Bank One's trust department that such a high stock allocation was too risky for a settlor of Marie's age. Timothy also discovered that due to favorable stock market conditions during the 1990s, Marie's trust investments had increased in

5

value to $1,800,000.[2] He further discovered that due to unfavorable market conditions in the years of 2000 and 2001, the value of the stock decreased in value to approximately $1,200,000. by mid-2001. Timothy testified that Marie was not aware of the value fluctuation in her trust's investments.

Timothy testified that in August of 2001, he and Michael each received a $100,000 gift from Marie. At that time, Marie had also executed an "amendment to the restatement" of the trust with the assistance of Charles Jardine, who had been her attorney since she first executed her trust agreement. The amendment reduced the gifts to Timothy and Michael in Marie's trust from $200,000 to $100,000 each.

Additional changes to specific bequests in the amendment included replacing Rhonda Balla with Carmon Keith, who was Marie's "caretaker." Marie signed and delivered the amendment on August 9, 2001, to Bank One.

Timothy testified that Marie continued to express her dissatisfaction with Bank One as her trustee and expressed dissatisfaction with Jardine as her attorney, and told Timothy that she desired to replace them both. She asked Timothy to help her transfer her trust from Bank One to LaGrange Bank, which had been chosen for its proximity to Marie's assisted living facility. Timothy testified that he contacted William Boylan, an attorney he knew, for his assistance in formulating the transfer.

Boylan testified in a discovery deposition that he met with Marie to discuss her trust.

---

[2] Nothing in the record details Marie's original trust investment value.

Boylan testified that he had examined Marie's trust agreement and informed her that because her assets had grown in value in the previous years, the majority of her trust assets would be distributed through the residuary clause to the Charities. Boylan testified that Marie told him that such a result was not her intent; that she wanted only a "leftover" portion of the trust assets to pass to the Charities and the stock investments to "go to Tim." Boylan also informed Timothy that the majority of Marie's trust assets would be distributed through the residuary clause to the Charities and Marie again expressed to Boylan, in Timothy's presence, that the trust agreement did not reflect her intent.

Christopher Joyce, an executive vice president and trust officer of LaGrange Bank, testified in a discovery deposition that he met with Marie and Timothy on January 10, 2002. At that meeting, Joyce testified that Marie explained to him that she wanted the stock investments be distributed to Timothy. He also testified that Timothy informed him that Boylan would be drafting an amendment to Marie's trust to transfer the trust from Bank One to LaGrange Bank.

Joyce and Boylan both testified in their discovery depositions that they formulated a plan of action, with Marie's oral approval, whereby they would first remove Bank One as trustee, appoint LaGrange Bank as successor trustee and initiate the transfer of Marie's trust assets to LaGrange Bank. Second, they would discuss with Marie her concerns regarding her trust agreement and her investments. Third, they agreed that after all the assets were transferred to LaGrange Bank, any amendments to Marie's trust agreement would then be drafted to reflect her intentions.

Joyce testified that in February he received a document entitled "second amendment to the

7

restatement" (second amendment) to Marie's trust agreement from Boylan. In addition to appointing LaGrange Bank as successor trustee, the second amendment also provided that, after Marie's death and prior to full and final distribution of the trust's assets, any acting trustee could be removed by Timothy. The second amendment was dated February 11, 2002, and signed by Marie. Joyce signed the second amendment on behalf of LaGrange Bank accepting appointment as successor trustee.

Joyce testified LaGrange Bank received Marie's trust assets from Bank One at the end of March 2002 and that the delay in transferring the trust assets was caused by Bank One. Joyce further testified that LaGrange received the remaining nonstock assets from Bank One in July of 2002, which included an insurance policy and "EE" bonds.

Joyce further testified that LaGrange hired Feldman Securities Group, an investment advisory firm, to perform an analysis of Marie's trust assets and present its recommendation for reallocating her investments. On May 13, 2002, the vice president of Feldman Securities Group, Brian McNamara, stated in an affidavit that he sent LaGrange an investment recommendation form (Feldman investment form) that he prepared concerning Marie's trust assets. McNamara further stated in his affidavit that he received Marie's investment information and placed his recommendations in the Feldman investment form, although he never met with Marie. He further stated that he was not an attorney and was not asked to prepare a trust amendment for Marie. McNamara also testified in a discovery deposition that Feldman Securities does not prepare trust amendments. The following day, Joyce brought the completed Feldman investment form to Marie for her review, and Marie signed and approved the form.

8

The Feldman investment form listed the amount of cash, bonds, and stocks that Marie had invested in her trust. It also listed McNamara's proposed reallocation of those investments. The Feldman investment form further included a "comments" section which stated: "We understand this trust is for the benefit of [Marie]. These assets will eventually go to her nephews." Stamped on the investment recommendation form was the word "Approved" with Marie's signature underneath.

Attorney Boylan testified that he received no further contact from Marie, Joyce or Timothy to draft any further amendments to Marie's trust agreement. On August 19, 2002, Marie died.

According to the original complaint, the value of the investments in her trust was approximately $1,250,000 at the time of her death. Approximately $300,000 were disbursed in accordance to the specific bequests contained in the trust agreement. The residue of the trust is approximately $950,000.

In September 2002, Timothy discovered a handwritten note in a phone book located in Marie's night table next to her bed. The handwritten noted was undated and unsigned and listed the following:

| | |
|---|---|
| "Tim Herlehy | Stock |
| Michael Herlehy | 200,000 |
| Rich Bugacz | 15,000 |
| J Bugacz | 5,000 |
| Vicki | 20,000 |

| Bonnie | 15,000 |
| Carmen | 5,000" |

In October 2002, pursuant to his power enumerated in the trust agreement, Timothy replaced LaGrange Bank as trustee and appointed Guaranty Trust Company as successor trustee. Guaranty Trust was later renamed as ATG Trust Company.

Procedural History

On September 7, 2005, Timothy filed his original complaint against ATG Trust Company, the Charities, and the Illinois Attorney General. Count I was a cause of action for trust construction and count II for unjust enrichment against the Charities. Timothy alleged that Boylan acted as Marie's attorney and LaGrange Bank acted as her trustee. Timothy further alleged that Boylan was aware of the changes she sought to make to her trust agreement so that only a relatively small portion would pass through the residuary clause to the Charities.

On November 2, 2006, Timothy filed a verified three-count amended complaint (first amended complaint) adding his brother Michael as a plaintiff and LaGrange Bank as an additional defendant. The first amended complaint included nearly identical allegations as the original complaint; however, plaintiffs also alleged that Marie's written instructions to LaGrange Bank were signed and delivered to LaGrange Bank and accepted in writing through the Feldman investment form. Plaintiffs alleged that if the valid amendment was not effectuated, the failure was caused by LaGrange Bank's breach of its fiduciary duty to act upon Marie's written instructions.

On July 10, 2007, LaGrange Bank filed a motion to dismiss pursuant to sections 2-

619(a)(9) and 2-615 of the Code claiming that: (1) it was released from any liability when Timothy signed a release upon removing LaGrange Bank as trustee; and (2) LaGrange Bank legally could not draft an amendment to the trust agreement for Marie under the Illinois Corporation Practice of Law Prohibition Act (Act) (705 ILCS 220/0.01 *et seq.* (West 2006)), which prohibited it from drafting amendments to trust agreements.

On November 26, 2007, plaintiffs filed a response arguing that their first amended complaint is not based on an allegation that LaGrange Bank was required to draft legal documents, but that it breached its fiduciary duty by failing "to ensure [that] a valid amendment to the trust was effectuated."

On January 18, 2008, the trial court entered a written order granting LaGrange Bank's motion to dismiss without prejudice. In the written order, the trial court agreed with LaGrange Bank that pursuant to the Act, LaGrange Bank could not draft legal documents, such as an amendment to a trust agreement, as LaGrange Bank is a corporation prohibited from practicing law. The trial court also found that it was Boylan's duty as Marie's attorney for estate planning to draft any amendments to Marie's trust and that, under the Illinois Rules of Professional Conduct, Boylan was prohibited from receiving directions from LaGrange to draft amendments to Marie's trust agreement. Any amendments had to be directed by the settlor, who was Marie. The trial court then granted plaintiffs leave to file a second amended complaint.

On February 15, 2008, plaintiffs filed a verified second amended complaint. The verified second amended complaint included nearly identical allegations as the original complaint; however, plaintiffs alleged that Marie hired Boylan to undertake only the drafting of the

11

amendment to appoint LaGrange Bank as trustee. Plaintiffs further alleged that Boylan was not employed by Marie or contacted by LaGrange Bank to draft an amendment or meet with Marie in May 2002, it was LaGrange Bank's failure to contact an attorney to prepare the amendment to the trust which resulted in the failure to amend Marie's trust agreement as she requested. Specifically, plaintiffs alleged that Marie stated to Joyce that it was her wish that all of her stocks be bequeathed to Timothy and that Joyce replied on "at least two occasions" to Marie and Timothy as follows:

"that her directives to bequeath or gift all her stock to Timothy *** would be accomplished as she intended and that no further steps would be necessary on her part. [Joyce] assured he would coordinate professionals including contacting attorneys or investment advisors as needed on her behalf and bring any required documents to her residence for signature."

On March 14, 2008, LaGrange Bank again filed its motion to dismiss pursuant to sections 2-619(a)(9) and 2-615 of the Code. LaGrange Bank again argued that it had no duty to draft amendments to Marie's trust agreement or retain an attorney to make such amendments. According to LaGrange Bank's reply, plaintiffs' filed a response on April 14, 2008, but that response is not included in the record.

On June 17, 2008, the trial court entered a written order granting LaGrange Bank's motion to dismiss, with prejudice. The trial court found the following inconsistencies between plaintiffs' verified first amended complaint and their verified second amended complaint: In the verified first amended complaint, plaintiffs allege that Boylan acted as her new attorney and she

12

directed LaGrange Bank and Boylan to initiate whatever changes necessary to her trust and estate plan to avoid a windfall to the residuary beneficiaries. Whereas, in the verified second amended complaint, plaintiffs allege that Marie employed Boylan as her attorney to only undertake the drafting of an amendment to change LaGrange Bank to the successor trustee.

Further, in the verified first amended complaint, plaintiffs allege that Boylan's actions were far broader in scope and that he: (a) corresponded with Bank One to inform it of its removal as trustee; (b) assured Marie and Timothy that the stocks would be conveyed to Timothy without any need to act further; (c) would undertake, with LaGrange Bank, the transfer of the assets or prepare further amendments to the trust as needed to effectuate Marie's intent; and (d) advised Marie that additional amendments would not be implemented until the Trust assets had been transferred from Bank One. Whereas, in the verified second amended complaint, plaintiffs allege that Boylan was not employed by decedent or contacted by LaGrange Bank to draft an amendment or meet with Marie in May 2002; and it was LaGrange Bank's failure to contact an attorney which resulted in the trust agreement not being amended to reflect Marie's intent.

The trial court found that because the first amended complaint was verified, the allegations became judicial admissions and any inconsistent allegations in the second amended complaint would be ignored. As a result, the trial court concluded that plaintiffs' allegations in the second amended complaint against LaGrange Bank mirrored the first amended complaint. The trial court again found that LaGrange Bank had no duty to advise Marie to make amendments to her trust and owed no duty to hire an attorney to verify that the trust provisions conformed with Marie's intent. Moreover, the trial court found that even if LaGrange Bank voluntarily assumed a duty to

13

appoint an attorney for Marie, it was not the failure to make the appointment that caused the damage, but the failure to amend the trust. The trial court then granted LaGrange Bank's motion to dismiss with prejudice.

On November 20, 2008, the Charities filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2006)) of the Illinois Code of Civil Procedure and submitted a supporting memorandum. The Charities claimed that: (1) the Feldman investment form is not a valid amendment to Marie's trust as a matter of law; (2) the handwritten note was not a valid amendment to Marie's trust as a matter of law; (3) the language contained in the trust is clear and unambiguous; and (4) the Charities will not be unjustly enriched because the trust grants to them assets not bequeathed to plaintiffs or other individuals.

On November 24, 2008, LaGrange Bank filed a motion to add language that would include an Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 1989) finding "that there is no just reason for delaying either enforcement or appeal or both" of the trial court's June 17, 2008 order granting LaGrange Bank's motion to dismiss with prejudice. On December 2, 2008, the trial court granted the motion.

On February 13, 2009, plaintiffs filed a response and a cross-motion for summary judgment against the Charities claiming: (1) the Feldman investment form was a valid amendment to the trust; (2) the handwritten note found in Marie's night table after her death also constituted a valid amendment to the trust; (3) the term "balance" as used in the trust is ambiguous; and (4) the distribution of the remaining assets of the Marie's trust to the Charities would result in the unjust enrichment for the Charities at plaintiffs' expense. Plaintiffs argued that (1) and (2) above

14

comply with the amendment provision in the trust that states: "[t]he settlor may at any time or times amend or revoke this agreement in whole or in part by [an] instrument in writing (other than a will) delivered to the trustee."

On July 7, 2009, after a hearing on the motions, the trial court entered a written order granting the Charities' motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. The trial court found that the Feldman investment form was not a valid amendment to Marie's trust because McNamara, who drafted the Feldman investment form was not a lawyer and thus if he had drafted an amendment to Marie's trust his actions would be in violation of section 2BB of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2BB (West 2006)). Moreover, the trial court found that McNamara could not have acted as a "scrivener"[3] to document Marie's amendment to the trust agreement, because he never spoke with her; he received instructions and information about the investments only from Joyce and never intended to prepare an amendment to Marie's trust, but rather, an analysis of her investments at the request of LaGrange Bank.

The trial court further found that plaintiffs' claim of unjust enrichment did not apply because there was no evidence that plaintiffs were third party beneficiaries to an agreement between Marie and LaGrange Bank. The trial court concluded that Marie's trust "unambiguously

---

[3] A "scrivener" is defined as "[a] writer; esp., a professional drafter of contracts or other documents." Black's Law Dictionary 1466 (9th ed. 2009).

entitles the Charities to its residuary, and found that the Charities have the superior right to the assets of [Marie's] Trust." As a result, the trial court granted the Charities' motion for summary judgment and denied plaintiffs' cross-motion for summary judgment.

On July 22, 2009, LaGrange Bank filed a motion for reimbursement of its attorney fees claiming it is entitled to attorney fees pursuant to document entitled "Receipt and Approval of Administration" of Marie's trust, which was signed by Timothy and delivered to LaGrange Bank. The document provided that Timothy released and discharged LaGrange Bank from "any expenses or costs (including legal or other professional fees) in connection with" Marie's trust after October 31, 2002. In addition, LaGrange Bank claims it is entitled to attorney fees under common law because a trustee that is not at fault is entitled to be reimbursed for all of its expenses properly incurred in administering the trust, citing *Kerner v. Peterson*, 368 Ill. 59, 81 (1937); *Patterson v. Northern Trust Co.*, 286 Ill. 564, 567 (1919) and *Continental Illinois National Bank & Trust Co. of Chicago v. Sax*, 199 Ill. App. 3d 685, 696 (1990). Further, LaGrange Bank claims "reimbursement" includes legal fees and expenses incurred by a trustee in defending actions brought by the beneficiaries alleging wrongdoing upon a finding exonerating the trustee, citing *First Midwest Bank/Joliet v. Dempsey*, 157 Ill. App. 3d 307, 316 (1987).

On August 12, 2009, plaintiffs filed a motion for reimbursement of its attorney fees and costs. Plaintiffs are claiming that attorneys who represent parties having an interest in the construction of a trust agreement are entitled to reasonable fees from the trust estate. *Orme v. Northern Trust Co.*, 25 Ill. 2d 151 (1962). However, fees are allowable from the trust estate if an ambiguity exists, which is often defined as "an honest difference of opinion as to the proper

16

construction" of the testamentary agreement or ambiguity. *In re Estate of Reeve*, 393 Ill. 272, 294 (1946); *Northern Trust Co. v. Winona Lake School of Theology*, 61 Ill. App. 3d 966 (1978). Plaintiffs claim that a judicial construction of Marie's trust was required and that there was an honest difference concerning that construction; therefore, reimbursement of their attorney fees is proper.

On November 4, 2009, after a hearing on the LaGrange Bank's motion for attorney fees, the trial court entered a written order denying LaGrange Bank's motion for attorney fees for lack of jurisdiction. The trial court found that LaGrange Bank's claim for attorney fees was created when the trial court granted LaGrange Bank's motion to dismiss on June 17, 2008. LaGrange Bank then requested the trial court to include Rule 304(a) language in its decision, which the trial court included on November 24, 2008. LaGrange Bank's motion for attorney fees was not filed until six months after plaintiffs filed their notice of appeal. The trial court concluded that LaGrange Bank's motion for attorney fees was not filed within 30 days of the entry of the final order, and as a result, it had lost jurisdiction.

On December 10, 2009, the trial court entered a written order denying plaintiffs' motion for attorney fees. The trial court found that no construction of Marie's trust was necessary to determine that the Feldman investment form was not an amendment to the trust and thus, plaintiffs were responsible for their own attorney fees and costs.

ANALYSIS

In this consolidated appeal, plaintiffs claim that the trial court erred in: (1) granting LaGrange Bank's motion to dismiss; (2) granting the Charities' motion for summary judgment;

17

and (3) denying their motion for reimbursement for its attorney fees. LaGrange Bank claims that the trial court erred in finding that it lacked jurisdiction to consider LaGrange Bank's motion for reimbursement of its attorney fees.

Cross-Motions for Summary Judgment

First, plaintiffs claim that the trial court erred in granting summary judgment in favor of the Charities and denying their cross motion for summary judgment. Specifically, plaintiffs claim that the trial court erred in finding that the Feldman investment form was not a valid amendment to Marie's trust because it was drafted by a nonlawyer in violation of section 2BB of the Consumer Fraud Act.

A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). The grant or denial of a summary judgment motion is reviewed under a *de novo* standard. *Hernandez v. Alexian Brothers Health Systems*, 384 Ill. App. 3d 510, 519 (2008). In addition, a trial court's construction of a trust instrument is also reviewed under a *de novo* standard. *Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 32 (2007).

In granting the Charities' motion for summary judgment and denying plaintiffs' cross-motion for summary judgment, the trial court found that section 2BB of the Consumer Fraud Act applied. 815 ILCS 505/2BB (West 2008). Section 2BB provides, in pertinent part, as follows:

"The assembly, drafting, execution, and funding of a living trust document or any

18

of those acts by a corporation or a nonlawyer is an unlawful practice within the meaning of this Act. ***

This Section shall not apply to any State or national bank, State or federal savings and loan association, savings bank, trust company, or any other corporation that has received a certificate of authority authorizing the exercise of trust powers under the Illinois Corporate Fiduciary Act." 815 ILCS 505/2BB (West 2008).

In its written order, the trial court determined that, under section 2BB, a trust agreement that is prepared by a person who is not an attorney is unlawful and thus, void. Applying section 2BB to the facts of the case, the trial court concluded that the Feldman investment form that plaintiffs' claim constitutes an amendment to Marie's trust agreement was drafted by McNamara, and it is undisputed that McNamara is not an attorney.

Plaintiffs claim that section 2BB is not applicable to this case because LaGrange Bank presented Marie with the Feldman investment form and LaGrange Bank is exempt because section 2BB "shall not apply to any State or national bank ***[or] trust company." 815 ILCS 505/2BB (West 2008).

We find nothing in the transcripts of the legislative debates that would support plaintiffs' contention that an otherwise void trust amendment under section 2BB would become a valid trust amendment because a bank or trust company presented the amendment to its client, as in this case when LaGrange Bank gave Marie the Feldman investment form. House Bill 2163 was proposed because members of the Senate committee were concerned with organizations selling living trust

19

documents to consumers without regulation. 88th Ill. Gen. Assem., Senate Proceedings, May 19, 1993, at 105. Senate Amendment No. 1 to House Bill 2163 was adopted to clarify that the bill is not directed at the day-to-day activities of financial institutions and trust companies, which are closely supervised by government regulators. 88th Ill. Gen. Assem., Senate Proceedings, May 19, 1993, at 106.

Based on the legislative history, we also find plaintiffs' argument that applying section 2BB to banks and trust companies would create an undue burden on settlors to determine whether a trust document received from a bank or trust company was prepared by an authorized person not persuasive. The amendment to the bill was not to affect the daily activities of those financial institutions, and Joyce testified that LaGrange Bank did not draft trust documents on behalf of its clients and did not retain an attorney to do so. See 705 ILCS 220/0.01 (West 2008) (prohibiting corporations from practicing law, directly or indirectly).

Plaintiffs further claim that section 2BB is not applicable to this case because it is a criminal statute which requires intent and there is no evidence of criminal intent in the preparation and execution of the Feldman investment form. We also find this argument not persuasive. Trust agreements are construed in the same manner as contracts and subject to the same limitation that they will not be enforced if contrary to public policy. See *In re Estate of Mendelson*, 298 Ill. App. 3d 1, 3 (1998). A contract that violates a valid statute is void. *Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298 (2006).

The trial court also relied on *Landheer v. Landheer*, 383 Ill. App. 3d 317 (2008), a decision from the Third District of the Illinois Appellate Court, in granting summary judgment in

the Charities' favor and against plaintiffs. We find *Landheer* instructive in our analysis here. In *Landheer*, an ailing father asked one of his three sons to draft a document to amend his trust agreement. Defendant son testified that he spoke with his father and took notes on what his father wanted amended in the trust agreement. Defendant further testified that he "did not wait for [his father's] attorney" because his father had asked him to draft the document "right away" as he was concerned about his failing health. In drafting the document, defendant decided what language to use and even added some details of his own. A "short time" after discussing the matter, defendant brought the document to his father's home for his father to review and sign. *Landheer*, 383 Ill. App. 3d at 319-20.

Defendant's brother, one of the plaintiffs, was present at the father's house along with a third party. The father told defendant that the document "was what he wanted." The father then signed the document and defendant's brother and the third party signed the document as witnesses. A few days later defendant took the document to the father's attorney. The father died approximately a week later. *Landheer*, 383 Ill. App. 3d at 320.

Defendant's two brothers brought a suit to have a trial court enter a declaratory judgment that the disputed document drafted by defendant was not an effective amendment to their father's trust. Defendant filed a counterclaim to the contrary. Plaintiffs filed a motion to dismiss defendant's counterclaim pursuant to section 2-619 of the Code, asserting that the disputed document is void because it was prepared by a person who is not an attorney in violation of section 2BB of the Consumer Fraud Act. The trial court granted plaintiffs' motion and defendant appealed. *Landheer*, 383 Ill. App. 3d at 319-20.

21

The appellate court found that the statutory language of section 2BB of the Consumer Fraud Act was clear and unambiguous and that it "expressly prohibits the assembly, drafting, execution, and funding of a living trust document by a nonlawyer" including a document that "amends a living trust for another person." *Landheer*, 383 Ill. App. 3d at 320. Given the clear language of the statute, the court concluded that the document drafted by the defendant violated section 2BB of the Consumer Fraud Act and did not constitute a valid amendment to his father's trust agreement because defendant was not a lawyer. *Landheer*, 383 Ill. App. 3d at 320.

Here, as in *Landheer*, the Feldman investment form, which plaintiffs' claim constitutes an amendment to Marie's trust agreement, was drafted by a nonlawyer, McNamara, in violation of section 2BB of the Consumer Fraud Act. Based on the reasoning in *Landheer*, the Feldman investment form is not a valid trust amendment.

Plaintiffs claim that *Landheer* is distinguishable because the defendant who drafted the alleged amendment in *Landheer* would benefit if the amendment was determined to be valid, whereas Joyce and McNamara would receive no benefit if the amendment was determined to be valid. However, plaintiff does not show, and we cannot find, any reference in the *Landheer* decision where the court even considered the concept of benefit in its holding that section 2BB expressly prohibits a nonlawyer from drafting trust amendments.

Here, there are distinguishing factors that support the trial court's conclusion that the Feldman investment form was not a valid amendment. In *Landheer*, the father requested that his defendant son create an amendment to his trust agreement. Here, Marie did not hire LaGrange Bank to amend her trust agreement or to create the Feldman investment form. LaGrange Bank,

acting in its role as trustee, hired McNamara to prepare a document to advise Marie on changing her trust investments. McNamara never spoke with Marie and the only information he received concerning the trust investments was from Joyce. McNamara stated that he has never prepared a trust amendment, that he and his company do not prepare trust amendments, and that he never intended to prepare an amendment to Marie's trust. In addition, there is no evidence that Joyce acted as Marie's lawyer or agent in giving the Feldman investment form to Marie for her approval, or that Joyce intended the form to be an amendment to the trust when he gave it to Marie for her approval. Joyce testified that he does not draft legal documents and that LaGrange does not offer its clients an attorney to do so.

Plaintiffs further claim, as did the defendant in *Landheer*, that McNamara acted as a "scrivener" because the Feldman investment form "perfectly reflected the intentions that [Marie] had expressed so often." We find this argument not persuasive, as did the *Landheer* court.

In *Landheer*, the appellate court found that although the son spoke with his father and the father approved the drafted amendment was "what he wanted." The court rejected defendant's "scrivener" argument because, in drafting the document, the son decided what language to use and even added some details of his own. *Landheer*, 383 Ill. App. 3d at 322.

In this case, it is undisputed that McNamara never spoke with Marie and that any information he received concerning Marie's investments was received second-hand from Joyce. He also testified that he could not recall Joyce's exact language when he wrote in the comments section of the Feldman investment form. Moreover, McNamara stated that he had no idea that he was preparing a trust amendment, and therefore, could not be a "scrivener."

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

In addition, plaintiffs argue that the Feldman investment form, which was signed by Marie, complies with the trust's requirement that Marie, as settlor, may amend the trust "by instrument in writing (other than a will)." Black's Law Dictionary defines an "instrument" as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary 869 (9th ed. 2009).

Plaintiffs cite *Whittaker v. Stables*, 339 Ill. App. 3d 943 (2003), for support. At issue in *Whittaker* was whether a letter from settlor to her daughter which amended the terms of her trust constituted a signed instrument. The daughter admitted to destroying the letter; however, the settlor's daughter-in-law testified to the contents of the letter. In deciding whether the letter constituted a signed instrument, the Second District of the Illinois Appellate Court did not consider this issue because it "assume[d] that the writing possessed the wording necessary for the status of a signed instrument." *Whittaker*, 339 Ill. App. 3d at 947.

In this case, unlike in *Whittaker*, we do not need to assume any wording in the Feldman investment form because it is included in the record. Plaintiff does not point to any wording in the Feldman investment form that "defines rights, duties, entitlements, or liabilities" that would make it an "instrument." Furthermore, there is no evidence that the Feldman investment form constitutes a "legal document." The Feldman investment form proposed a reallocation of Marie's stock investments. In addition, Joyce and McNamara both testified that the Feldman investment form was created to recommend to Marie how to reallocate her stock investments. They further testified that her signature under the word "approved" on the Feldman investment form reflects her approval of the reallocation recommendation. See, *e.g.*, *Northwestern University v.*

24

*McLoraine*, 108 Ill. App. 3d 310, 318 (1982) (concluding an unsigned scrap of paper and a list of names is not a formal legal document to constitute an instrument in writing for amending a trust agreement).

Plaintiffs further argue that although Joyce and McNamara could not remember Marie's exact instructions, the Feldman investment form "perfectly reflected" Marie's intent as is, and thus is a valid amendment to the trust. We do not find any evidence to support that argument. Under Illinois law, a trust must be specific as to the beneficiaries and "how the trust is to be performed." *Eychaner v. Gross*, 202 Ill. 2d 228, 253 (2002); see also Restatement (Third) of Trusts §22(1)(b) (2003) (stating that a trust must "reasonably identify the trust property, the beneficiaries"). In other words, it must show who the beneficiaries are and what each one will receive. The comments section of the Feldman investment form states that the stock "assets will eventually go to her nephews." However, the Feldman investment form does not identify the "nephews" who are to receive the stock assets. At the time of Marie's death, she had two living nephews, Richard and Joseph Bogacz. Even if "nephews" meant grandnephews, as plaintiffs claim, then the Feldman investment form contradicts plaintiffs' allegations in the second amended complaint that Marie wanted the stock assets to "go to Tim," or reflect Boylan's or Joyce's recollections that the stock assets were to be bequeathed to Timothy individually. Furthermore, the "comments" section of the Feldman investment form does not specify the proportion each "nephew" was to receive.

In sum, there is no dispute that the Feldman investment form was prepared by an nonlawyer in violation of section 2BB of the Consumer Fraud Act and as a result is void. Further, the Feldman investment form is not a valid amendment to the trust even if it had been prepared by

25

a lawyer for the reasons stated. Accordingly, the trial court properly granted the Charities motion for summary judgment and properly denied plaintiffs' cross motion for summary judgment.

Plaintiffs' Motion to Dismiss LaGrange Bank

Second, plaintiffs claim that the trial court erred in granting LaGrange Bank's motion to dismiss plaintiffs' second amended complaint pursuant to sections 2-619(a)(9) and section 2-615 because LaGrange Bank failed to either retain an attorney to draft the amendment to the trust or contact or appoint an attorney for Marie to do so.

Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2008). In a motion to dismiss under section 2-619(a)(9), all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion and the motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). The pleadings, depositions, and affidavits must be construed "in the light most favorable to the nonmoving party." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 613 (2007). When considering an appeal from a section 2-619 dismissal, reviewing courts must determine whether a genuine issue of material fact exists which should have precluded dismissal and, if no such issue exists, whether dismissal was proper as a matter of law. *Lang v. Silva*, 306 Ill. App. 3d 960, 970 (1999). Our review of dismissals under section 2-619 of the Code is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003); *Lang*, 306 Ill. App. 3d at 970 (citing *Spiegel v. Hollywood Towers Condominium Ass'n*,

26

283 Ill. App. 3d 992, 998 (1996)).

A motion to dismiss under section 2-615 of the Code is a challenge to the legal sufficiency of the complaint. 735 ILCS 5/2-615 (West 2008). In reviewing the legal sufficiency of a complaint, we regard all well-pled facts as true and draw all reasonable inferences in favor of the non-moving party. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003); *Iseberg v. Gross*, 366 Ill. App. 3d 857, 860 (2006). We construe the complaint liberally and dismiss only when it appears that plaintiffs cannot recover under any set of facts. *Wakulich*, 203 Ill. 2d at 228; *Iseberg*, 366 Ill. App. 3d at 861. The standard of review from the granting of a section 2-615 motion to dismiss is *de novo*. *Wakulich*, 203 Ill. 2d at 228; *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 586 (2004) (citing *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563 (2002)).

As an initial matter, the parties argue whether that the trial court properly found inconsistencies between their verified first amended complaint and their verified second amended complaint. Specifically, LaGrange Bank argues that in plaintiffs' first verified amended complaint, plaintiffs allege that Boylan was Marie's estate planning attorney. However, in the verified second amended complaint plaintiffs allege that Boylan was only hired to amend the trust agreement and appoint LaGrange Bank as successor trustee. Plaintiffs argue that the two complaints are not inconsistent but, rather, show that Boylan's employment was limited in scope to only amending the trust agreement to appoint LaGrange Bank as trustee. Plaintiffs further argue that because Boylan was not employed to make any further amendments, the duty to amend Marie's trust shifted to LaGrange Bank.

We need not decide that issue. Even if, in construing all pleadings, depositions, and

27

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

affidavits in the light most favorable to plaintiffs, we agree with plaintiffs that the allegations in the two amended complaints are not inconsistent, we would still conclude that LaGrange Bank had no duty to amend the trust and that the trial court properly granted the motion to dismiss.

To state a cause of action for breach of a fiduciary duty, a plaintiff must allege and ultimately prove: (1) a fiduciary duty on part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 53 (1994); *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 747 (2009). " ' "A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust *according to its terms* and to act with the highest degrees of fidelity and utmost good faith." ' " (Emphasis added). *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007) (quoting *In re Estate of Muppavarapu*, 359 Ill. App. 3d 925, 929 (2005), quoting *Giagnorio v. Emmett C. Torkelson Trust*, 292 Ill. App. 3d 318, 325(1997)). See also *Stuart v. Continental Illinois National Bank & Trust Co.*, 68 Ill. 2d 502, 523 (1977); *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, 155 (1938); *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 74 (2005); Restatement (Second) of Trusts §2, Comment *b* (1959); Restatement (Second) of Trusts §170 (1959).

In the case at bar, plaintiffs do not cite any authority to support their claim that LaGrange Bank, as trustee, owed them a duty to either: appoint or consult an attorney concerning amending Marie's trust; communicate with Marie concerning amending her trust; or "institute adequate follow-up procedures" to amend Marie's trust. In addition, having found that the Feldman investment form is not a valid amendment to Marie's trust agreement, plaintiffs also do not cite

28

any terms in Marie's trust agreement that impose a legal duty for LaGrange Bank to act to amend the trust agreement.

Further, LaGrange Bank, a corporation, is prohibited from practicing law and thus, is prohibited from drafting trust agreements. 705 ILCS 220/0.01 *et seq*. (West 2008). Joyce also testified that LaGrange Bank does not draft legal documents for its clients and does not employ an attorney to do so. The duty to draft an amendment was Marie's obligation. Boylan was her attorney for estate planning at the time and was never told by Marie to prepare an amendment. This duty does not fall to LaGrange Bank because LaGrange Bank was aware that Marie intended to amend her trust and may have not had an attorney that she trusted to effectuate that amendment. It is equally possible that she did not want Boylan or any attorney to amend her trust at the point in time of her death.

Plaintiff further claims that LaGrange Bank voluntarily assumed a duty because Joyce "assured [Marie] he would coordinate professionals including contacting attorneys *** as needed on her behalf ***." A duty associated with a voluntary undertaking is limited to the extent of the undertaking. *Rice v. White*, 374 Ill. App. 3d 870, 886 (2007). Thus, according to plaintiffs' second amended complaint, LaGrange Bank's breach of its voluntary duty is that it failed to contact or retain an attorney on her behalf.

However, to state a cause of action for breach of a fiduciary duty, plaintiffs must show that the breach is a proximate cause of the damages. Although proximate cause is generally a question of fact for the trier of fact, a court may determine a lack of proximate cause as a matter of law where the facts fail to establish both a "cause in fact" and "legal cause." *Rice*, 374 Ill. App.

29

3d at 888 (citing *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999)). A defendant's conduct is a "cause in fact" of the plaintiff's damages if the damages would not have occurred absent defendant's conduct. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004). A defendant's conduct is a "legal cause" of a plaintiff's damages if a reasonable person would find the damages as a foreseeable or likely result of defendant's conduct. *Abrams*, 211 Ill. 2d at 258.

In the case at bar, Joyce's failure to contact or retain an attorney is not the cause in fact or legal cause of plaintiffs' damages. Rather, the failure to amend Marie's trust with a valid amendment that would show her intentions was the proximate cause of plaintiff's damages.

In sum, dismissal of plaintiffs' second amended complaint was proper under section 2-619(a)(9) of the Code because LaGrange Bank is prevented from practicing law under the Corporate Practice of Law Prohibition Act (705 ILCS 220/0.01 (West 2008)). Dismissal was also proper under section 2-615 because plaintiffs failed to state a cause of action for breach of fiduciary duty because LaGrange Bank had no duty to plaintiffs and even if LaGrange Bank assumed a voluntary duty, it was not the proximate cause of plaintiffs' damages as a matter of law.

### Plaintiff's Motion for Attorney Fees

Third, plaintiffs request that we reverse the trial court's motion denying plaintiffs' motion for reimbursement of attorney fees and costs if we find that the trial court erred in granting summary judgment in favor of the Charities and against plaintiffs or granting LaGrange Bank's motion to dismiss. Having affirmed the trial court's decision on those two issues, we must also affirm the trial court's denial of plaintiffs' motion for reimbursement of attorney fees and costs

because we have not reversed the trial court. We need not decide whether plaintiffs would have received reimbursement of attorney fees and costs had we reversed the trial court because that did not occur here.

LaGrange Bank's Motion for Attorneys Fees

LaGrange Bank claims the trial court erred when it found that it lacked jurisdiction to hear LaGrange Bank's motion for reimbursement of attorney fees because the motion was untimely filed. Whether a motion was timely filed and whether a court has jurisdiction to hear such a motion is a question of law which we review under a *de novo* standard. See *In re Estate of Ahern*, 359 Ill. App. 3d 805, 809 (2005); *In re Estate of Gebis*, 186 Ill. 2d 188, 192 (1999)

In this case, the trial court granted LaGrange Bank motion to dismiss on June 17, 2008 with prejudice. On December 2, 2008, the trial court granted LaGrange Bank's request to insert Rule 304(a) language in the June 17 order, stating that the order is a final order and "[t]here is no just reason for delaying either enforcement or appeal or both." On July 22, 2009, LaGrange Bank then filed a motion for attorney fees. The trial court found that, to be timely, LaGrange Bank's motion should have been filed within 30 days of December 2, 2008, when the trial court inserted language pursuant to Rule 304(a) into the June 17, 2008, order.

Illinois Supreme Court Rule 304(a) provides that "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal [or both]." Ill. S. Ct. R. 304(a) (eff. Jan. 1, 1989). An order is "final" if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the

entire controversy or on separate and definite part of it. *Ariola v. Nigro*, 13 Ill. 2d 200, 207 (1958).

A circuit court retains jurisdiction for 30 days after its entry of a final order or judgment. *Brewer v. National R.R. Passenger Corp.*, 165 Ill. 2d 100, 105 (1995); *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 96 (2009). A circuit court has jurisdiction to entertain a motion for attorney fees filed within 30 days of the entry of a final judgment without regard to a previously filed notice of appeal. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 343 (2001); *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 468-69 (1990); *Servio v. Paul Roberts Auto Sales, Inc.*, 211 Ill. App. 3d 751, 760 (1991). In addition, a circuit court has jurisdiction to address a timely-filed motion for attorney fees regardless of whether the request is considered to be part of the original action or collateral to the original claim. *John G. Phillips & Associates*, 197 Ill. 2d at 343; *Marsh*, 138 Ill. 2d at 460; *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 453 (2000); *Berger v. Matthews*, 216 Ill. App. 3d 942, 944 (1991); *Servio*, 211 Ill. App. 3d at 759-60.

LaGrange Bank argues that its motion for attorney fees was timely filed because the motion is not a posttrial motion pursuant to section 2-1203 of the Code, and thus, the 30-day limitation does not apply. See *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1028 (1999); *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983 (1994) ("a claim for attorney fees is not a post-trial motion within sections 2-1202 and 2-1203 of the Code *** nor, even if viewed as a motion to modify the judgment, is it a post-trial motion 'directed against the judgment' within the meaning of Supreme Court Rule 303(a).").

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

Plaintiffs agree that a motion for reimbursement is not a posttrial motion, but argue that LaGrange Bank is still subject to a 30-day limitation to file its motion.

Section 2-1203 provides that "[i]n all cases tried without a jury, any party may, within 30 days after entry of the judgment *** file a motion for a rehearing, or a retrial, or a modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2008).

We find LaGrange Bank's argument not persuasive. LaGrange Bank's argument implies that if a motion is not a posttrial motion pursuant to sections 2-1202 or 2-1203, then the trial court retains jurisdiction without limitation. A trial court has jurisdiction over the underlying action until "30 days after entry of that final judgment [citations]; or 30 days after ruling on the last pending post-trial motion [citation]." *F.H. Prince*, 266 Ill. App. 3d at 988; *People v. Flowers*, 208 Ill. 2d 291, 303 (2003) (trial court loses jurisdiction over a matter 30 days after entry of final judgment, unless a timely postjudgment motion is filed).

In the case at bar, the trial court's June 17, 2008, order became a final order on December 2, 2008, when the trial court inserted Rule 304(a) language making it a final and appealable order. As a result, the final judgment terminated the litigation between LaGrange Bank and plaintiffs. See *Glickman v. Teglia*, 388 Ill. App. 3d 141, 151 (2009) (when all claims against a party are dismissed that party is no longer before the trial court once the 30-day period after the dismissal passes). Thus, LaGrange Bank had until January 2, 2008, 30 days after the order became a final judgment, excluding the January 1, 2008, holiday, in which to file its motion for attorney fees. However, LaGrange Bank did not file its motion for attorney fees until approximately six months later, on July 22, 2009. Therefore, the trial court correctly found that it lacked jurisdiction to

33

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

consider that motion because it was untimely filed.

LaGrange Bank next argues that a trial court retains post-judgment jurisdiction to determine matters collateral or incidental to the judgment, such as a motion for attorney fees. *In re Estate of Denaro*, 112 Ill. App. 3d 872, 878 (1983) ("The general rule is that the filing of an appeal divests the trial court of jurisdiction; however, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment. [Citation]. Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from."). LaGrange Bank further argues that the time when a trial court loses jurisdiction to hear collateral or incidental matters to the judgment is not until "30 days past the date of the last order or judgment was issued in the case." *Gaynor v. Walsh*, 219 Ill. App. 3d 996, 1002 (1991). LaGrange Bank then concludes that its motion for attorney fees was timely filed within 30 days of the last order entered in the case, the trial court's order granting summary judgment in favor of the Charities and against plaintiffs on July 7, 2009.

We also find this argument not persuasive. In *Gaynor*, a plaintiff filed a complaint against a defendant alleging wrongful transfer of partnership assets. On September 12, 1990, the trial court granted defendant's motion for summary judgment. On September 20, the plaintiff filed a posttrial motion to reconsider which was denied on November 15, 1990. None of the orders contained Rule 304(a) language. On December 10, 1990, within 30 days of the trial court's ruling on plaintiff's posttrial motion, the defendant filed a motion for attorney fees pursuant to Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Aug. 1, 1989)). The *Gaynor* court found that the trial court retained jurisdiction over the motion for attorney fees because defendant filed the motion

34

Nos. 1-09-0038; 1-09-1892; 1-09-3295; 1-09-3431; 1-10-0070; 1-10-0071 (cons.)

within 30 days of the trial court's order denying plaintiff's posttrial motion and that order did not contain Rule 304(a) language. *Gaynor*, 219 Ill. App. 3d at 998.

Similarly, in *F.H. Prince*, a plaintiff's complaint sought entry of a judgment against a defendant in an amount of the principal and interest due on a settlement agreement plus attorney fees and costs. After a jury trial, the trial court entered a judgment for plaintiffs on February 6, 1991, for the principal and interest due. On February 25, 1991, the plaintiff filed a petition for an award of interim attorney fees based upon a fee shifting provision in the settlement agreement. On April 4, 1991, the trial court entered a judgment for attorney fees in favor of plaintiff. On the same day, the defendant filed a posttrial motion, which the trial court denied on May 8, 1991. The following day, the plaintiff filed a second petition for attorney fees covering the period through May 8. On May 13, 1991 the defendant filed a notice of appeal from the orders and judgments entered through May 8, 1991. The trial court held that it had jurisdiction to hear the plaintiff's motion for attorney fees file on May 9, 1991 and entered judgment on that motion. *F.H. Prince*, 266 Ill. App. 3d at 979-80.

The appellate court, which relied on *Gaynor* in its decision, found that the petition for attorney fees was a timely filed claim because it was filed one day after the trial court's denial of defendant's posttrial motion, "well within the 30-day period following that denial, and while the [trial] court retained jurisdiction to set aside any final judgment or order."

Although these two cases are distinguishable from the case at bar because: (a) they did not involve multiple parties; (b) none of the orders contained language pursuant to Rule 304(a) and (c) motions for attorneys fees was a sanction pursuant to Rule 137 (Ill. S. Ct. R. 137 (eff. Aug. 1,

35

1989)), we do not find that they support LaGrange Bank's argument that a trial court retains jurisdiction over a dismissed party's claims until all claims in the litigation are resolved.

In addition, the cases LaGrange Bank cites for additional support of its argument are distinguishable from the case at bar because the motions for attorney fees in those cases were all filed within 30 days of the final judgment which allowed the trial court to retain post-judgment jurisdiction. See, *e.g.*, *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066, 1072 (1987) (trial court retained jurisdiction to hear claim for attorney fees which was filed within 30 days of the final judgment); *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 453 (2000) (trial court retained jurisdiction to hear claim for tax costs and motion filed within 30 days of final judgment). *American National Bank & Trust Co. of Chicago v. Bus*, 212 Ill. App. 3d 133, 138 (1991) (trial court retained jurisdiction to hear motion for Rule 137 sanctions which was filed within 30 days of judgment).

In the case at bar, the June 17, 2008 order dismissing LaGrange Bank from the litigation became a final judgment on December 2, 2008, when the trial court inserted into that order the Rule 304(a) language at LaGrange Bank's request. LaGrange Bank then had a 30-day period following that denial to file its motion for reimbursement of attorney fees, but it failed to do so. Accordingly, we find the trial court correctly found that it lacked jurisdiction to hear that motion.

CONCLUSION

For the foregoing reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.