In the Matter of the Estate of W. M. Durham, Deceased. (Grace E. Hart, Respondent-Appellant; Trustees of the First Methodist Church of Kankakee, Illinois, Masonic Temple Association of Kankakee, Illinois, Rainbow Council Boy Scouts of America, Shriners Hospitals for Crippled Children, a Corporation, Respondents-Appellees; G. Eugene Anderson and Eva L. Minor, Executors of the Last Will and Testament of W. M. Durham, Deceased, Petitioners-Appellees).

Gen. No. 65–13.

Third District.

August 23, 1965.

Wayne P. Dyer, of Kankakee, for appellant.

Edwin W. Sale, of Kankakee, for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This is an appeal by respondent, Grace E. Hart, from an order of the Circuit Court of Kankakee County, in Probate, ordering distribution under the will of W. M. Durham, deceased. The order of distribution found that a devise of "insurance business" in the will of the testator included accounts receivable but did not include the "Premium Fund Trust Account" which was ordered distributed under the residuary clause of the testator's will.

The will provided:

"Section I. I bequeath my insurance business to my Secretary, Grace E. Hart and all my office furniture and fixtures with the exception of my personal desk and lounge on condition that she agrees to assist my Executor, without charge, in the probate of my Estate. I also direct that she be charged for the inheritance tax due the State of Illinois on this bequest." . . .

"Section III. All the rest of residue of my estate, including cash, contracts, stocks, bonds, real

estate and personal (intending to include everything I possess not mentioned in Paragraphs 1 and 2), I give, devise and bequeath to my Executor, Joseph J. Tolson, for the following uses and purposes: . . ."

The pleadings consist of a petition by the executor for authority to make distribution of the accounts receivable and the Premium Fund Account under Section I of the will to Grace E. Hart, her answer concurring in the petition, and the answers and objections of other respondents praying distribution to them as residuary legatees.

The facts of the case are substantially undisputed. The testator conducted a business for many years which had three parts: insurance, loans and real estate. His office consisted of two rooms, one occupied by him and one by the Respondent, Grace E. Hart, who had been in his employ for over ten years at the time of his death, serving as secretary and doing bookkeeping, issuing policies, waiting on customers and doing banking and collecting. In addition, she rendered personal services to the testator such as chauffeuring and buying groceries. The businesses were conducted under the name D. L. Durham and Son which had been continued from a previous association with the testator's father.

A separate set of books was kept for the insurance part of the business, consisting of a cash journal, ledger, accounts current, checkbook and premium fund account book. At the time the will was executed, the testator kept one principal bank account, known as the General Business Account, into which loans and collections upon contracts of sale of real estate were placed and from which office overhead was paid, and into which insurance premiums were paid.

113

After the execution of the will, a section of the Insurance Code was enacted requiring that a separate fund be set up, known as the Premium Fund Trust Account, and from that time, this was kept as a separate account. Under the bulletin provided by the Director of Insurance, the statement was made that "Unremitted insurance premiums and other fiduciary insurance funds are to be kept in the Premium Fund Account separate from any operating, office, business or other accounts of agents and brokers." The instructions further provided that funds other than premiums could be deposited in the account to the extent deemed prudent by the broker "for the purpose of maintaining a minimum balance or to guarantee the adequacy of the account, or for the purpose of . . . the payment of premiums to . . . a company in advance of their collection."

All premiums were deposited to the Premium Fund Account including the testator's share from this account. The companies were paid from this account once a month, and return premiums to policyholders in cases of cancellation and rate adjustments were also paid therefrom.

It was the testator's practice to refund the entire refund premium in such cases to the policyholder and to later collect the company's share of the premium from the company. Another use of the Premium Fund Account was to make remittances to the insurance companies for premiums on policies sold on credit. There were periodic withdrawals of profits from the Premium Fund Trust Account, and just prior to the testator's death the appellant paid claims against the account of around $3,000, in order not to complicate their collection from Mr. Durham's estate in the event that he was fatally ill, as it appeared that he was. This left a balance of $8,374.21 in the account at the time of his death, which is the amount in dispute. There

was evidence of a practice to keep a balance in the account in the area of $10,000.

The determination of whether the Premium Fund Trust Account was part of testator's "insurance business" as that term is used in the will is subject to general rules applicable to construction of wills.

 The court's function in construing a will is to ascertain the actual intention of the testator. The intention of the testator is to be determined by a full and complete consideration of the will. When such intent cannot be ascertained from the language alone, the language used is considered in the light of the facts and circumstances which existed at the time of the execution of the will. The court must place itself in the position of the testator and not consider subsequent facts and circumstances. Abrahams v. Sanders, 274 Ill 452, 113 NE 737 (1916); Evans v. DeBruler, 49 Ill App2d 35, 198 NE2d 531 (1964); Martin v. Martin, 273 Ill 595, 113 NE 150 (1916); Vollmer v. McGowan, 409 Ill 306, 99 NE2d 337 (1951). Although the intention of the testator is ascertained on the basis of facts and circumstances which existed when the will was made, the operation and effect of the will on the testator's property is determined as of the date of his death. Lydick v. Tate, 380 Ill 616, 44 NE2d 583 (1942); Peter v. Peter, 343 Ill 493, 175 NE 846 (1931); 36 ILP Wills, sec 222, p 321.

Appellee argues that the testator could not have intended the gift of the Premium Fund Account under clause I of the will because it was not in being at that time; but appellant urges, and we believe correctly, that the insurance business devised in 1957 is not the same in form or condition as the insurance business existing at the time of the testator's death. It is universally true that businesses change on a daily basis and that the testator must have intended that the business be given as it should exist upon his death.

The fact that the Insurance Code was later amended to require maintenance of a Premium Fund Account is a fact subsequent to the execution of the will and in itself cannot be a decisive consideration. However, the same issue would have resulted if only a general account was in effect at testator's death. At the time of the execution of the will, there was a portion of cash in that account available for and used in the insurance business. The fact that the law required the account may in itself be some indication that the legislature considered it a part of the insurance business. But, in any event, it is reasonable to expect that appellant would have been entitled to a pro rata share of this account for the insurance business monies involved had the Premium Fund not been established, inasmuch as there was cash available in that account for the use of the insurance business. It is reasonable to assume also that there would be return premiums required to be paid out of the account in the future and some reserve would be required. If the whole account is taken, in effect money being held in trust would be distributed into the residue under the will. Under a contrary view, there would be no basis for determining the amount required to set up a proper reserve.

The trial court found that the term "insurance business" included the insurance business accounts receivable, and appellant concedes that the general business account under the name of D. L. Durham and Son should be distributed to the legatees under section III of the will. This account was in the sum of $12,456.27 and consisted of receipts from loans and collections from real estate contracts, all of which pertained to decedent's mortgage and real estate business. Appellee has filed no cross appeal from the order providing for distribution of accounts receivable to

appellee and apparently agrees that they are included in the term "insurance business."

Appellee has placed considerable emphasis on Knight v. Bardwell, 32 Ill2d 172, 205 NE2d 249, but this Court finds that case to have no application to the present situation. Plaintiff Knight was bequeathed 150 shares of stock under a provision giving all stock "as constituted when my will and codicil became effective," clearly indicating an intent to exclude subsequent acquisitions. In the case at bar, the words "insurance business" are broad enough to include a special account used only for insurance purposes. Nor do we find Piper v. Piper, 27 Ill App2d 127, 169 NE2d 280 (1960), persuasive in this case.

The rule is well settled in Illinois that after-acquired property, though not specifically provided for, may pass under the terms of the will according to the testator's intent. Halderman v. Halderman, 342 Ill 550, 11 NE 526; In re Estate of Capasso, 55 Ill App2d 330, 204 NE2d 788.

The Premium Fund Account was required by the State and used in virtually all operations of deceased's insurance business. After ten years of service, appellant Hart used said account as an integral part of testator's operations. She was its only signee and was given the responsibility to deal with this account by the deceased. Considering this close working operation between testator and appellant, it seems to the court that testator intended for her to continue his insurance business. This account is necessary for the company's operation, and it was specifically separated from testator's personal monies and used exclusively for insurance business purposes.

The major portion of this fund is held for the benefit of the insureds and without such provision, their interests as well as the business itself would be con-

117

siderably damaged. We also find it difficult to consider this account as "after acquired property" as that term has been used in Illinois case law. Appellant's contention, that this account is actually the result of a State-required alteration of deceased's operations and is not essentially a newly acquired property, has persuasion.

With no Illinois case law directly in point, appellee has cited In re Britt's Estate, 249 Wis 602, 26 NW2d 34 (1946), but this court finds Britt to be inapplicable to the case at bar. In that case a bank account in the company name was held not to pass with the business. This account, however, was only that of a general business account used for payment of overhead and other expenses and is comparable to testator Durham's general business account in our case. This account was neither needed for the continuation of the business, nor was it required by the State for company operations. Consequently, that case can have no application in a situation involving a special premium fund used specifically for insurance purposes.

Appellant receives some support for her position from In re Hohn's Estate, 40 NYS2d 237 (1943), where the term "business" as used in testator's will was held to include a bank account maintained in the name of the corporation. In Coyle v. Donaldson, 91 NJ Eq 122, 105 A 605 (1919), the Court construed a devise of "the coal business now owned by me" to include a bank checking account in the company name.

An appraisal of cases in various jurisdictions dealing with the question of what is included in the term "business" cannot be controlling, dependent as each case is on intention to be gathered from varying language, facts and circumstances. However, the following factors have been considered as showing intention to include bank accounts as a part of a "business:" whether the account is in the name of the firm

118

or business, and whether the testator kept his personal and business funds in separate accounts, In re Zent's Estate, 148 Neb 104, 26 NW2d 793 (1947); Van Buren v. Plainfield Trust Co., 130 NJ Eq 244, 22 Atlantic2d 189 (1941); whether the funds are a necessary part of the business, whether the legatee had independent capital, and the control which the legatee was given over the business in the testator's lifetime, Murphy v. Murphy, 177 Atlantic 682 (NJ Eq—affirmed by the New Jersey Court of Errors and Appeals in 180 Atlantic 829).

■ Considering the language of the will and the facts and circumstances relied upon to define the meaning of the ambiguous term "insurance business," the Court is of the opinion that the testator intended to bequeath the Premium Fund Account to appellant. At the time of the execution of the will, testator considered the funds in the Premium Trust Fund an asset of the insurance business. He intended that his secretary should continue to operate this business. There was no evidence that she had independent funds for that purpose. The testator did not use the funds in the Premium Fund Account directly for personal uses.

Therefore, the Order of Distribution will be reversed and the cause remanded to the trial court with directions to enter an order distributing the Premium Trust Fund Account to Appellant, Grace E. Hart, in accordance with the views herein expressed.

Judgment reversed.

ABRAHAMSON, P. J. and DAVIS, J., concur.