*In re* ESTATE OF HEBER P. HOSTETTER, Deceased.—(HEBER P. HOSTETTER, JR., Plaintiff-Appellant, *v.* THE ESTATE OF HEBER P. HOSTETTER, Defendant-Appellee.)

Second District   No. 78-495

Opinion filed August 28, 1979.

Lawrence L. Bruckner, of Dixon, for appellant.

Robert W. Weissmiller and John A. Leemon, both of Mt. Carroll, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

On October 29, 1951, Heber P. Hostetter executed his last will and testament. On January 6, 1953, Mr. Hostetter died, survived by his wife, Florence S. Hostetter; by his sons John L. Hostetter, Scofield R. Hostetter (an incompetent) and Heber P. Hostetter, Jr.; and by his daughter, Marelene Hostetter Evison. On March 2, 1953, Mr. Hostetter's will was admitted to probate in the circuit court of Carroll County, where the decedent resided and where his real property was located. Letters testamentary were apparently then issued to Florence S. Hostetter and she acted in the capacity of executor of her husband's estate until her death, intestate, on February 16, 1978. John Hostetter was also named

executor of Heber Hostetter's will. However, the record contains no mention of the issuance of letters testamentary to him. As of September 8, 1978, the estate of Heber P. Hostetter had not been closed. Other than an accounting in 1955, no effort was ever made to keep track of the personal estate of the decedent, and no distribution of either personal or real property ever occurred.

On July 12, 1978, a petition for the construction of the decedent's will was filed by Heber P. Hostetter, Jr., as a supplemental proceeding in the probate court. Count I of that petition recited that questions had arisen concerning the meaning of various clauses of the will and that the court should construe those clauses so as to guide the actions of the successor executor, John L. Hostetter. John L. Hostetter filed a motion to strike the petition and, as a consequence, the probate court dismissed count I with prejudice as to the petitioner, who now appeals as to that count only.

Essentially, what is at issue here is the meaning of the fourth, sixth, seventh and ninth clauses of the decedent's will. In pertinent part, those clauses read as follows:

"FOURTH,—I give, devise and bequeath unto my said wife, FLORENCE S. HOSTETTER, all the real estate of which I may die seized and possessed, whether now owned. or hereinafter acquired and wheresoever situated, to have, hold, use and enjoy the same for and during her natural life * * *

* * *

SIXTH,—Subject to the life estate herein bequeathed to my said wife, I give, devise and bequeath unto my said son, John L. Hostetter, my home farm and homestead, containing, approximately, 200 acres, commonly known as WILDERBERG. *Inasmuch as it is my intention and desire to make a just and equal division of my estate among my children,* said WILDERBERG FARM in the final distribution of my estate shall be charged to my said son at a valuation of THIRTY-TWO THOUSAND ($32000.00) DOLLARS and my said son shall pay unto my estate the difference between such valuation and his equal portion of the residuary estate hereunder.

SEVENTH,—Subject to the life estate bequeathed to my said wife, I give, devise and bequeath unto my daughter, MARLENE HOSTETTER EVISON, my farm containing, approximately, 184 acres knows as EAST WILDERBERG. *For "the reasons above assigned,* this farm shall be chargable to my said daughter in the final distribution of my estate at a valuation of TWENTY THOUSAND ($20000.00) DOLLARS, and my said daughter shall pay unto my estate the difference between such valuation and her equal portion of the residuary estate hereunder.

* * *

NINTH,—At the death of my said wife, I direct that my entire personal estate then remaining and not specifically bequeathed, be converted into money and the amount thereof together with the sum of THIRTY TWO THOUSAND ($32000.00) DOLLARS arising from the charge against the WILDERBERG FARM, and the sum of TWENTY THOUSAND ($20000.00) DOLLARS arising from the charge against EAST WILDERBERG FARM, *be divided into four equal parts*, and I give and bequeath unto my son, HEBER P. HOSTETTER, JR., and my son JOHN L. HOSTETTER, and my daughter, MARELENE HOSTETTER EVISON, each, one of said parts, the remaining part I give and bequeath unto my son, JOHN L. HOSTETTER and my daughter, MARELENE HOSTETTER EVISON, in trust for the uses and purposes following * * *." (Emphasis added.)

Based on these clauses, the petitioner/appellant contends that there is a latent ambiguity in the Will because of an alleged conflict between the expression of the testator in the sixth clause that: "Inasmuch as it is my intention and desire to make a just and equal division of my estate among my children * * *," and the fact that the farms referred to in the sixth and seventh clauses have, due to inflation, actually increased in value more than tenfold over the specific valuations placed on them by the testator. The petitioner contended below that this situation should be cured by the court inserting the present assessed values of the farms into the terms of the sixth and seventh clauses. The trial court did not agree. Neither do we.

▄▄▄ The law in Illinois is clear that a statutorily valid will takes effect at the death of the testator. (*In re Estate of Durham* (1965), 62 Ill. App. 2d 111, 210 N.E.2d 632.) It is equally clear that:

"The construction of a will is not made to depend upon subsequent facts or conditions arising after the will took effect. [Citation.] The courts cannot found a construction of a will on conjecture, but must take the language of the will as they find it. When a condition has arisen in regard to a testator's estate which he had not taken into consideration and which he would probably have provided for if he had thought of it when making his will, the court cannot conjecture what provision he would have made unless that provision is contained in the words he has used in making his will. [Citation.] The intention of the testator is not to be deduced from speculation as to what he would have done had he anticipated a change in the circumstances surrounding him at the time of the execution of the will, since this would amount to making a will for him and not to interpreting the will he has made." (*Gridley v. Gridley* (1948), 399 Ill. 215, 229, 77 N.E.2d 146, 153.)

Based on this, it is clear, first of all, that the testator chose to make specific valuations of his two farms in 1951 and at his death in 1953, when the will took effect, those values were not unreasonable. Therefore, there can be no latent ambiguity in the sense depended on by the petitioner. Furthermore, even if this were not the case, the law does not permit the circuit or appellate courts of this State to redraft the clear and unambiguous language of a testator's will merely because of unfortuitous circumstances which may have arisen since the testator's death.

In addition, in the instant case, the other clauses of the testator's will showed a clear intent to discriminate in many regards between the petitioner and his brother John and sister Marelene. For example, they received, under clause eighth, all of the testator's personal furnishings and effects while the petitioner only received his share of the residuary estate. In fact, the only time that he is mentioned in the entire will is in clause ninth.

For the reason set forth above, the order of the circuit court dismissing the petition in this case is affirmed.

Affirmed.

SEIDENFELD and NASH, JJ., concur.