REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

BMO HARRIS BANK N.A., as Trustee of the Mary A. Cornelius Trust Dated November 18, 1972, f/b/o Martin P. Cornelius, Jr., and as Trustee of the Martin P. Cornelius, Sr. Trust, f/b/o Martin P. Cornelius, Jr.,

Plaintiff and Counterdefendant-Appellee,

v.

RICHARD S. TOWERS, as Successor Trustee of the Martin P. Cornelius, Jr. Revocable Living Trust, HARRY H. CORNELIUS, CAMILLA ANNE CORNELIUS, and MARTIN P. CORNELIUS III,

Defendants and Counterplaintiffs-Appellants

(DAGMAR CORNELIUS,

Defendant-Appellee).

Nos. 1-13-3351 & 1-13-3635 (Consolidated)

Appellate Court of Illinois
First District, FIFTH DIVISION

October 23, 2015

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.
The Hon. Thomas R. Allen, Judge Presiding.

**COUNSEL FOR DEFENDANTS-APPELLANTS**
Norman J. Lerum, P.C., Chicago, IL 60603
OF COUNSEL: Norman J. Lerum and Catherine E. Lerum


**COUNSEL FOR PLAINTIFF-APPELLEE BMO HARRIS BANK N.A.**
Chapman and Cutler LLP, Chicago, IL 60603
OF COUNSEL: Rebecca Wallenfelsz and Bryan E. Jacobson


**COUNSEL FOR DEFENDANT-APPELLEE DAGMAR CORNELIUS**
Harrison & Held, LLP, Chicago, IL 60606
OF COUNSEL: Robert S. Held and George N. Vurdelja, Jr.

2015 IL App (1st) 133351

Nos. 1-13-3351 & 1-13-3635 (Consolidated)

FIFTH DIVISION<br>October 23, 2015

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., as Trustee of the Mary A. Cornelius Trust Dated November 18, 1972, f/b/o Martin P. Cornelius, Jr., and as Trustee of the Martin P. Cornelius, Sr. Trust, f/b/o Martin P. Cornelius, Jr., | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) | |
| v. | ) ) | No. 12 CH 38519 |
| RICHARD S. TOWERS, as Successor Trustee of the Martin P. Cornelius, Jr. Revocable Living Trust, HARRY H. CORNELIUS, CAMILLA ANNE CORNELIUS, and MARTIN P. CORNELIUS III, | ) ) ) ) ) | |
| Defendants and Counterplaintiffs-Appellants | ) ) | |
| (DAGMAR CORNELIUS, | ) ) | Honorable Thomas R. Allen, |
| Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶1    This cause arose when plaintiff BMO Harris Bank N.A. (Bank), as trustee of two trusts, filed a petition seeking instructions from the court regarding the validity of the exercise of the testamentary powers of appointment by Martin Cornelius, Jr., (Martin Jr.) over the two trusts,

which were created by his parents. Thereafter, the trustee of Martin Jr.'s revocable living trust and three of Martin Jr.'s four living children (collectively, the Towers defendants) filed a counterpetition against the Bank, alleging that Martin Jr.'s exercise of his powers of appointment was valid and the Bank violated its fiduciary duties by filing its petition. Another defendant, Martin Jr.'s daughter Dagmar Cornelius, moved for partial summary judgment in her favor on certain counts of the Bank's petition.

¶2     The trial court granted Dagmar Cornelius's partial motion for summary judgment, held that Martin Jr. improperly exercised the powers of appointment granted to him by his parents, and instructed the Bank to distribute the trust funds held in the parents' two trusts *per stirpes* to Martin Jr.'s four living children. The trial court also granted the Bank's motion for judgment on the pleadings and dismissed the Towers defendants' counterpetition, and granted Dagmar's petition for attorney fees.

¶3     On appeal, the Towers defendants contend Martin Jr. properly exercised his powers of appointment over his parents' two trusts using his revocable living trust as a conduit; the trial court erred in granting the Bank's motion to dismiss the Towers defendants' counterpetition; and the trial court erred by summarily granting Dagmar's petition for attorney fees.

¶4     For the reasons that follow, we affirm the judgment of the circuit court.  We hold that: (1) As the trust donee, Marin Jr.'s exercise of his limited testamentary powers of appointment in favor of himself was ineffective and therefore void because he was not a permissible appointee; (2) as the trustee, the Bank acted within its fiduciary duties by filing a petition seeking instruction from the court regarding the proper distribution of the trusts; and (3) the trial court did not err in awarding Dagmar attorney fees without conducting an evidentiary hearing.

¶5                                        I. BACKGROUND

¶6      Mary and Martin Cornelius, Sr., created two trusts with the Bank as trustee that were to be administered for the benefit of their son, Martin Jr., during his lifetime. Each trust granted Martin Jr. a limited testamentary power of appointment. Under the terms of the Mary trust, Martin Jr. could appoint assets to or in further trust for his spouse, Mary's descendants other than Martin Jr., or the spouses of such descendants.  Under the terms of the Martin Sr. trust, Martin Jr. could appoint assets to or in further trust for his spouse, his lineal descendants and their spouses, Martin Sr.'s other lineal descendants and their spouses, or any charitable organization. Under the terms of the Mary trust and Martin Sr.'s will, if the powers of appointment were not effectively exercised, then distributions would be made to the descendants of Martin Jr. living at the time of his death.

¶7      During his lifetime, Martin Jr. created a revocable living trust (the Martin Jr. trust). Martin Jr. died a resident of North Carolina in 2006 and was survived by his spouse and four children, Harry, Martin III, Camilla, and Dagmar. Martin Jr.'s last will and testament, dated 1991, was admitted to probate in North Carolina. Section 1.1 of Martin Jr.'s will directed: "that all of my legal debts, the expenses of the administration of my estate and the expenses of my last illness, funeral and interment be paid out of my estate, but not from any marital assets which are exempt from federal estate tax unless there are no other assets available."  In sections 2.2 and 2.3 of his will, Martin Jr. exercised his limited powers of appointment under the Mary and Martin Sr. trusts by appointing all the property to the trustee of the Martin Jr. trust. Section 3.1 of the will provided that Martin Jr. devised "the residue of [his] estate, including [his] property over which [he] may have any general power of appointment at the time of [his] death" to the trustee of the Martin Jr. trust "to be administered as part of the principal of the Trust."

¶8    Section 1.1 of the Martin Jr. trust agreement stated that the "Trust assets shall consist of assets previously transferred by [Martin Jr.] to the trustee, and such other assets as [Martin Jr.] may transfer to the trustee, or which the trustee shall receive and accept from other sources, including [Martin Jr.'s] estate, and any other assets substituted therefor or added thereto." Section 4.1 of the trust agreement addressed the trustee's administration of the trust during Martin Jr.'s lifetime and provided that all income not distributed during Martin Jr.'s lifetime would be added to the principal.

¶9    Section 5.1 of the trust agreement instructed the trustee that, if Martin Jr.'s spouse survived him, then the trustee would divide the trust estate, "both income and principal, which shall include any additions made to the Trust by reason of [Martin Jr.'s] death (such as transfers under [Martin Jr.'s] Will, or life insurance policies on [Martin Jr.'s] life)," into a marital share and a credit shelter share. If Martin Jr.'s spouse did not survive him, then the credit shelter would consist of the entire estate. The marital share would be designated the Marital Deduction Share and the credit shelter share would be designated the Martin Phelps Cornelius, Jr. Family Trust.

¶10    Section 5.3 of the trust agreement directed the trustee, upon Martin Jr.'s death, to pay from the "original trust *** all debts, expenses of administration, and death taxes (estate, inheritance, and like taxes, including interest and penalties but not including any generation-skipping transfer taxes) that are payable as a result of [Martin Jr.'s] death." According to section 8.1 of the trust agreement, the "original Trust" created by the trust agreement may be referred to as the Martin Phelps Cornelius, Jr. Revocable Living Trust dated July 29, 1987, whereas the family trust may be referred to as the Cornelius Family Trust, followed by the date of the trust's initial funding. Section 5.5 of the trust agreement provided that "[a]t any time during the continuance of the original Trust after [Martin Jr.'s] death, the trustee may distribute to [Martin

4

Jr.'s] probate estate, as a beneficiary of the Trust, cash or other property out of any assets then held by the Trust." Section 5.7 of the trust agreement stated that "[w]hen all of the properties of the original Trust have been so divided and distributed, the original Trust shall be deemed terminated." After the death of Martin Jr.'s spouse, the remaining assets of the trust would be paid in equal shares to Martin Jr.'s son Harry and three of Martin Jr.'s grandchildren. Martin Jr. explicitly stated that his children Dagmar and Martin III were omitted as residuary beneficiaries.

¶11    The estate of Martin Jr. was closed in December 2007, and his trustee contacted the Bank in 2009 and transmitted information relating to the administration of the Martin Jr. estate for the purpose of transferring the assets held by the Bank in the Mary and Martin Sr. trusts to the Martin Jr. trust. However, the assets of the Mary and Martin Sr. trusts were never transferred to the Martin Jr. trust.

¶12    In October 2012, the Bank filed with the trial court a petition for instructions and approval of accounts and other relief. The Bank stated that, under the terms of the Mary and Martin Sr. trusts, the Bank was unsure whether or to what extent Martin Jr.'s exercise of the powers of appointment over his parents' two trusts was valid due to the possibility of impermissible appointees receiving property from the parents' two trusts.

¶13    In February 2013, the Towers defendants, *i.e.*, Harry Cornelius, Martin Cornelius III, Camilla Cornelius, and the trustee of the Martin Jr. trust, filed a counterpetition for instructions, declaratory relief and money damages. The Towers defendants argued that the Bank should have transferred the funds in the Mary and Martin Sr. trusts to the Martin Jr. trust, the exercise of the powers of appointment in the Martin Jr. trust was valid and consistent with the provisions of the Mary and Martin Sr. trusts, and the Bank breached its fiduciary duties to the beneficiaries of

the Martin Jr. trust by filing a petition for instructions and unnecessarily generating legal expenses.

¶14    Thereafter, defendant Dagmar Cornelius moved the court for partial summary judgment under section 2-1005(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(d) (West 2012)), arguing there was no genuine issue of material fact to be resolved concerning the counts of the Bank's petition requesting instructions on the validity of Martin Jr.'s exercise of the powers of appointment. Dagmar contended that the clear and unambiguous language of the Mary, Martin Sr., and Martin Jr. trusts and Martin Jr.'s will established that Martin Jr.'s appointment of the Mary and Martin Sr. trusts' property to Martin Jr.'s own trust exceeded the permissible class of appointees because neither power of appointment was exercisable in favor of Martin Jr., his creditors, his estate, or the creditors of his estate.

¶15    Thereafter, the Bank moved the court for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2012)). The Bank asserted there was a genuine question of law regarding Martin Jr.'s exercise of the powers of appointment, denied that it breached its fiduciary duty by instituting these proceedings, and asserted that it had a right to the determination of the propriety of its accounts before making a final distribution.

¶16    On September 4, 2013, the court granted Dagmar's motion for partial summary judgment and instructed the Bank to distribute the Mary and Martin Sr. trusts to Martin Jr.'s four living children, *per stirpes*. However, the court ruled that the Bank should not distribute the funds until the court approved the Bank's final accounting. The court also granted the Bank's motion for judgment on the pleadings and dismissed with prejudice the Towers defendants' counterpetition against the Bank. The court found that this order was final and appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶17    Thereafter, the Towers defendants moved the court to stay enforcement of the September 2013 order pending appeal without bond. The Towers defendants argued that the order was contrary to the intent of Martin Jr. as expressed in his trust and deprived certain designated beneficiaries of their distributions. The Towers defendants also argued that an appeal bond was unnecessary to protect Dagmar's interests because the Bank, as trustee, held the trust funds and the court should not approve the Bank's final accounting until completion of the appeal upon remand. This motion, however, was subsequently withdrawn.

¶18    Dagmar filed a petition for $49,780.43 in attorney fees, arguing the fees were payable out of the trusts because there was an honest difference of opinion as to the language of the trust agreements and her attorneys' work was in the interest of and benefitted the trusts. Invoices detailing the dates, billable hours and professional services provided were attached to the petition.

¶19    On October 2, 2013, the Towers defendants appealed the trial court's September 4, 2013 order, and the case was assigned No. 1-13-3351.

¶20    On November 12, 2013, the trial court granted Dagmar's attorney fee petition for $49,780.43. The court instructed the Bank to pay the total fee equally from the Mary and Martin Sr. trusts on or before November 26, 2013.

¶21    On November 14, 2013, the Towers defendants appealed the trial court's November 12, 2013 order, and the case was assigned No. 1-13-3635. On January 29, 2014, this court granted the Towers defendants' motion to consolidate the appeals in case Nos. 1-13-3351 and 1-13-3635.

¶22                                    II. ANALYSIS

¶23                     A. Improper Exercise of the Powers of Appointment

¶24     The Towers defendants challenge the trial court's ruling that granted Dagmar's motion for partial summary judgment and held that Martin Jr. violated the powers of appointment granted to him by his parents in the Mary and Martin Sr. trusts. The Towers defendants assert that Martin Jr. properly segregated the assets from his parents' trusts because after Martin Jr.'s death no assets were ever withdrawn from the Mary and Martin Sr. trusts, used for any improper purpose, or distributed to any improper beneficiary. The Towers defendants acknowledge that Martin Jr., as the donee of his parents' powers appointment, could not make the property subject to that power part of his estate for all purposes, and argue that the terms of Martin Jr.'s will and trust and extrinsic evidence establish that he intended to fulfill his parents' wishes without making the assets of their trusts part of his estate for all purposes.

¶25     According to the Towers defendants, the clear terms of the Mary trust agreement and Martin Sr.'s will allowed Martin Jr. to exercise the powers of appointment through the residuary clause of his trust and Martin Jr. simply exercised the powers in favor of a trustee with the intention of distributing the property subject to the powers of appointment to the permitted beneficiaries in accordance with the Mary and Martin Sr. trusts. Moreover, the Towers defendants assert that Martin Jr.'s designations to his spouse, his son Harry, and three of Martin Jr.'s grandchildren were proper because all the designated individuals were qualified beneficiaries under the terms of the powers of appointment. Although Martin Jr.'s designation to charitable organizations may not have been proper under the terms of the Mary trust, the Towers defendants contend this issue is moot because the facts demonstrate that the assets from the Mary

8

trust would never have been utilized to satisfy the specific charity distributions designated by Martin Jr.

¶26   "Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 460-61 (2010). We review a grant or denial of a summary judgment *de novo*. *Id*. at 461. A reviewing court's function in reviewing a trial court's entry of summary judgment is to ensure that no genuine issue of material fact was raised and to determine whether the judgment was correctly entered as a matter of law. *Comtrade, Inc. v. First National Bank of Highland Park*, 146 Ill. App. 3d 1069, 1072-73 (1986). A nonmoving party need not prove its case, but must present some factual basis entitling it to judgment. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1019 (2001).

¶27   Summary judgment is appropriate in a case involving the construction of a trust because the ascertainment of the trust's meaning or intent is strictly a matter of law. *First National Bank of Chicago v. Edgeworth*, 94 Ill. App. 3d 873, 880 (1981); see *Jones v. Heritage Pullman Bank & Trust Co.*, 164 Ill. App. 3d 596, 602 (1987) ("The meaning to be given the plain words of a written instrument is a question of law to be determined by the trial court."). A trial court's construction of a trust instrument is reviewed under a *de novo* standard. *Herlehy v. Marie V. Bistersky Trust*, 407 Ill. App. 3d 878, 889 (2010). "The purpose of a court in construing the provisions of a will is to give effect to the intention of the testator. [Citation.] [W]hen the words used in their ordinary sense are plain and their meaning clear, construction demands the use of the plain intention." (Internal quotation marks omitted.) *Jones*, 164 Ill. App. 3d at 601-02. The

same rules that pertain to the construction of a will also pertain to the construction of a trust, with the intention of the testator being of supreme importance. *Federick v. Lewis*, 164 Ill. App. 3d 240, 243 (1987).

¶28     "A power of appointment is not an absolute right of property, nor is it an estate, for it has none of the elements of an estate." *People v. Kaiser*, 306 Ill. 313, 316-17 (1922). The individual appointed the power takes title from the donor, not the donee. *Id.* at 317 "[A] power is said to be general when it is exercisable in favor of any person whom the donee may select, and special, limited, or particular when it is exercisable only in favor of persons or a class of persons designated or described in the instrument creating the power." (Internal quotation marks omitted.) *Pinzino v. Vogel*, 98 Ill. App. 3d 330, 332 (1981). A special power of appointment is only valid if it was exercised in compliance with any conditions established by the donor. *In re Estate of MacLeish*, 35 Ill. App. 3d 835, 838 (1976). "If the donee of a special power appoints a beneficial interest to a non-object of the power, the appointment is ineffective." *In re Buck Trust*, 301 A.2d 328, 330 (Del. Ch. 1973) (citing Restatement (First) of Property § 351 (1940)).

¶29     Both the agreement establishing the Mary trust and the will of Martin Sr. provide that Illinois law governs the interpretation and enforcement of those documents. Moreover, the plain language controlling the powers of appointment for both the Mary and Martin Sr. trusts establishes that Martin Jr. could not exercise the powers of appointment in favor of himself because he was not within the class of permissible beneficiaries designated by his parents. After reviewing the record, we conclude that the trial court properly granted partial summary judgment in favor of Dagmar because Martin Jr. improperly exercised his powers of appointment over the assets of the Mary and Martin Sr. trusts. Although Martin Jr.'s initial conveyance to the Martin Jr. trust could have been permissible pursuant to the terms controlling the Mary and Martin Sr.

trusts, the plain terms of Martin Jr.'s will and trust agreement provided that the assets from his parents' trusts would be commingled with the assets of his original trust and then his trustee would pay "all debts" that were payable as a result of Martin Jr.'s death from the original trust. No language in the Martin Jr. trust agreement segregated the assets from his parents' trusts from the assets of Martin Jr.'s original trust, and Martin Jr.'s creditors could have used the commingled assets to satisfy Martin Jr.'s debts.

¶30    A test to determine whether there has been a blending of the donee's own property with the appointed property provides: " 'The mere fact that the appointed estate is given to the same persons who take the residue of a testator's individual estate is not the test to be applied in determining whether there has been a blending of the two estates, but the real test under our line of decision is whether the testator has *treated the two estates as one for all purposes*, and manifested an intent to commingle them generally.' " (Emphasis in original.) *In re Estate of Breault*, 29 Ill. 2d 165, 176 (1963) (quoting *In re Hagen's Estate*, 132 A. 175, 176 (Pa. 1926)). We conclude that Martin Jr. blended his own property with the appointed property for all purposes. Contrary to the Towers defendants' argument on appeal, the plain language of section 5.3 of Martin Jr.'s trust agreement establishes that it was Martin Jr.'s intent to pay all his debts from his original trust, which included the assets appointed from the Mary and Martin Sr. trusts. Because Martin Jr. exercised his powers of appointment in favor of himself and he was not within the class of permissible beneficiaries under the limited powers of appointment designated by his parents, his impermissible exercise of his powers of appointment rendered the act of conveyance void. Accordingly, the trial court correctly instructed the Bank to distribute the appointed property *per stirpes* to Martin Jr.'s four children who were living at the time of his

11

death, in compliance with the terms of the Mary and Martin Sr. trusts in the event the powers of appointment were not effectively exercised.

¶31    The Towers Defendants' reliance on *In re Breault's Estate*, (*id*. at 177-78), where the court held that the donee did not commingle his own property with the appointed property for all purposes, is misplaced. In that case, the court noted that the donee, in the first two paragraphs of his will, specifically directed the payment of his debts and taxes before any attempt at blending or commingling occurred. *Id*. at 177. Here, in contrast, Martin Jr. directed the trustee of his trust to pay all his debts from the original trust, which included the appointed assets from his parents' trusts.

¶32    The Towers defendants claim that section 8.1 of the trust agreement manifests Martin Jr.'s intent that the trustee create two separate trusts to segregate, hold, administer and distribute the trust property. The Towers defendants also cite section 3.11 of the trust agreement, which states that a person serving "as trustee of any Trust created by this document" shall not be precluded from serving as trustee by reason of having a beneficial interest in the trust. We conclude, however, that these references to additional created trusts are not dispositive of the issue of the commingling of Martin's property with the appointed property. While Martin Jr. did direct his trustee, upon Martin Jr.'s death, to divide his original trust assets into a marital share and a credit shelter share, this was to be done after the appointed property was commingled with Martin Jr.'s estate property in the original trust. Moreover, the trustee was directed to pay, *inter alia*, all of Martin Jr.'s debts from the original trust.

¶33    The Towers defendants also argue extrinsic evidence establishes that no debts of Martin Jr.'s estate were ever paid from the assets of his parents' two trusts, and Martin Jr.'s spouse paid all the debts, expenses and taxes directly from Martin Jr.'s estate without taking any money from

12

the parents' two trusts held by the Bank. This happenstance, however, is not controlling in the determination of whether Martin Jr. improperly exercised the powers of appointment. "[A] statutorily valid will takes effect at the death of the testator." *In re Estate of Hostetter*, 75 Ill. App. 3d 1020, 1022 (1979); see also *In re Estate of Durham*, 62 Ill. App. 2d 111, 115 (1965) ("the operation and effect of the will on the testator's property is determined as of the date of his death"). Regardless of how the trustee actually performed his duties, the intent and validity of a will is determined at the time of death, and the will and trust agreement here dictated that Martin Jr.'s debts would be paid from the original trust, which contained the commingled assets of both Martin Jr.'s estate property and the assets from his parents' trusts. This was the intent of Martin Jr., and the fact that Martin Jr.'s creditors never actually accessed the assets of his parents' trusts does not remedy the invalid conveyance.

¶34                                B. Judgment on the Pleadings

¶35    The Towers defendants next contend the trial court erred in granting the Bank's motion for judgment on the pleadings because there are genuine issues of material fact that remain to be determined by the trial court. The Towers defendants allege the Bank waived the right to challenge the sufficiency of the Towers defendants' counterpetition under section 2-615 of the Code after the Bank had filed an answer and affirmative defenses to the counterpetition, and contend the Bank's failure to file a proper motion for summary judgment deprived the Towers defendants of the opportunity to file a counteraffidavit or take discovery on issues of fact concerning the Bank's answer and affirmative defenses. We disagree because after the trial court properly granted summary judgment in favor of Dagmar and held that Martin Jr. improperly exercised the powers of appointment, there were no genuine issues of material fact pending and the Bank was entitled to judgment on the pleadings as a matter of law against the Towers

defendants on their counterpetition alleging the Bank had breached its fiduciary duty by seeking court instructions concerning the validity of the exercise of the powers of appointment.

¶ 36    In a section 2-615 motion with respect to pleadings, a party denies the legal sufficiency of the complaint, essentially saying, "So what?  The facts the [complainant] has pleaded do not state a cause of action against me."  (Internal quotation marks omitted.)  *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶ 35. If a pleading is objected to by a motion to dismiss or for judgment because the pleading is substantially insufficient in law, the motion must specify wherein the pleading is insufficient. 735 ILCS 5/2-615(b) (West 2012). "Any party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2012).

¶ 37    "Judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005).  A reviewing court must determine whether any issues of material fact exist and, if not, whether the movant was entitled to judgment as a matter of law.  *Id.*  A reviewing court will review the trial court's decision *de novo*.  *Id.*  The trial court may only consider "facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record."  *Id.*  A trial court must take all well-pleaded facts as true except for conclusions of law that are unsupported by specific factual allegations.  *Horwath v. Parker*, 72 Ill. App. 3d 128, 134 (1979).  All reasonable inferences must be drawn in favor of the nonmoving party.  *Herlehy*, 407 Ill. App. 3d at 895.

¶ 38    "Unless the terms of the trust document provide otherwise, a trustee's fiduciary duty to each beneficiary precludes it from favoring one party over another."  *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1070 (1990).  A trustee may not argue that a trust should be interpreted in a manner beneficial to one beneficiary and detrimental to another; doing so

14

breaches the trustee's fiduciary duty of impartiality. *Id.* at 1072. However, a trustee must also carry out the trust according to its terms. *Herlehy*, 407 Ill. App. 3d at 896. A trustee may, whenever a situation arises that justifies proceedings, "ask the court for instructions as to their duties under the circumstances under which they or the trust funds are placed." (Internal quotation marks omitted.) *Warner v. Mettler*, 260 Ill. 416, 421-22 (1913); see *Northern Trust Co.*, 202 Ill. App. 3d at 1070-71 ("When there are conflicting claims to trust funds, a trustee is not required to make a determination as to the rights of the prospective claimants but should file an interpleader action to avoid acting at its own peril.").

¶39     As discussed above, the construction of a trust is a matter of law, and we have concluded, after *de novo* review, that Martin Jr. improperly exercised the powers of appointment in favor of himself. Therefore, the Bank's motion for judgment on the pleadings was correctly granted. There were no material facts in dispute and the Bank was entitled to judgment as a matter of law. The Bank did not breach its fiduciary duty to any beneficiary when it filed, per its duty, a petition for instructions from the court. The Bank, as trustee of the Mary and Martin Sr. trusts, had a duty to ensure that it administered the trusts as prescribed by the trust agreements. In seeking a determination on whether Martin Jr.'s appointment was valid, the Bank acted precisely as a trustee is tasked to act; it brought the action to be settled by the court and did not advocate for one interpretation over the other.

¶40     Accordingly, we affirm the trial court's order that granted the Bank's motion for judgment on the pleadings and dismissed the Towers defendants' counterpetition.

¶41                                C. Attorney Fees

¶42     The Towers defendants argue the trial court improperly awarded Dagmar $49,780.43 in attorney fees because the court did not hold a hearing on either "what services specifically were

15

devoted to unraveling any alleged ambiguity in the documents" or the reasonableness of the fees claimed.

¶43     "In will construction cases the costs of litigation are borne by the estate on the theory that the testator expressed his intention so ambiguously as to necessitate construction of the instrument in order to resolve adverse claims to the property." *Orme v. Northern Trust Co.*, 25 Ill. 2d 151, 165 (1962). An ambiguity exists where there is an honest difference of opinion regarding the proper construction of the trust. *Id.* If the trust is unambiguous and construction is unnecessary, no fees should be authorized. *Id.* Determining whether a trust provision is ambiguous is a question of law where "ambiguity can be found only if the language is reasonably or fairly susceptible to more than one interpretation." *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996). Fees should only be awarded for services rendered in furtherance of solving the ambiguity issue and not authorized for any service dealing with other issues. *First National Bank*, 94 Ill. App. 3d at 887-88. Furthermore, there should be a reasonable nexus between the total amount in controversy and the amount of fees authorized. *Id.* at 885. Ideally, the fee petitioners will present contemporaneously made, detailed time records as evidence of the services performed, by whom the services were performed, the time expended thereon, and the hourly rate charged therefore. *In re Estate of Bitoy*, 395 Ill. App. 3d 262, 273 (2009). "The matter of fixing attorneys' fees is one of the few areas in which a judge may rely upon the record before him and also upon his knowledge and experience." *First National Bank*, 94 Ill. App. 3d at 885. The need and amount of attorney fees awarded is at the discretion of the trial court and will not be reversed unless it abused that discretion. *Northern Trust Co.*, 202 Ill. App. 3d at 1071.

¶44    In the present case, the term "original trust" in the Martin Jr. trust agreement was ambiguous and susceptible to multiple meanings. There was an honest difference of opinion between whether the term could mean Martin Jr.'s estate before the blend of the appointed property or after. Consequently, there was ambiguity present in the instrument Martin Jr. used to appoint the powers granted to him by his parents. Furthermore, the trial court did not abuse its discretion in awarding Dagmar attorney fees. Dagmar presented the trial court with records that provided details and explanations about the purpose of the services her lawyers performed. After reviewing the record, we conclude that the services rendered were either beneficial in helping the trial court resolve the ambiguity present in Martin Jr.'s trust agreement and determine its effect on his exercise of his powers of appointment, or the services were so closely interrelated to defy separation in computing fees.  See *Orme*, 25 Ill. 2d at 167.  Moreover, the fees charged, which were less than 10% of the approximately $600,000 value of the parents' trusts, are reasonable in light of the amount of work performed and the value of the trusts.

¶45    The Towers defendants argue the trial court also erred by failing "to follow the standard established by *Orme*[, id. at 151,] by requiring Dagmar's counsel to prove at a hearing which services were devoted specifically to clarifying the ambiguities caused by inept legal draftsmanship and whether the fees for those services were reasonable." We disagree. Although a hearing on the issue of attorney fees was held in *Orme* under the circumstances of that case, *Orme* does not stand for the proposition that a trial court *must* conduct an evidentiary hearing before it may award attorney fees. Moreover, the Towers defendants have forfeited review of this issue by failing to specify, both before the trial court and on appeal, which fees presented in Dagmar's attorney fee petition were excessive or not related to the ambiguity resolved by the trial court in this matter. " 'A reviewing court is entitled to have issues clearly defined with

17

pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived.' " *McCarthy v. Denkovski*, 301 Ill. App. 3d 69, 74 (1998) (quoting *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991)).

¶46                                        III. CONCLUSION

¶47     We affirm the judgment of the circuit court granting Dagmar's motion for summary judgment, granting the Bank's motion for judgment on the pleadings and dismissing the Towers defendants' counterpetition against the Bank, and awarding Dagmar attorney fees.

¶48     Affirmed.