2020 IL App (2d) 180962-U
No. 2-18-0962
Order filed January 31, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| STELLA SPIRIDONOVA | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-MR-221 |
| | ) | |
| ACOSTA SALES AND MARKETING, INC., | ) | |
| and THE BOARD OF REVIEW OF THE | ) | |
| DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, | ) | Honorable |
| | ) | Kevin T. Busch, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Held: The trial court's judgment affirming the Board of Review of the Department of Employment Security was not clearly erroneous; complainant, who simply was dissatisfied with the hours, was not entitled to unemployment benefits because she left her employment voluntarily without good cause attributable to her employer.

¶ 2    Plaintiff, Stella Spiridonova, filed a complaint for administrative review seeking reversal of a decision by the Board of Review (Board) of the Department of Employment Security (DES) denying her unemployment benefits.   The circuit court affirmed the Board's finding that Spiridonova left her employer, Acosta Sales & Marketing, Inc. (a/k/a Acosta, Inc., hereinafter

Acosta), without good cause attributable to the employer. We conclude that the Board's finding was not clearly erroneous, and we therefore affirm the circuit court's decision.

¶ 3                                    I. BACKGROUND

¶ 4     On February 2, 2018, Spiridonova filed a complaint against Acosta in the circuit court for administrative review of a decision denying her unemployment compensation. She filed her amended complaint on June 6, 2018, which included the Board as a defendant.

¶ 5     The amended complaint contained a request that the circuit court review the Board's decision. Spiridonova attached to that complaint what described as her "Work history" with Acosta: Acosta hired her on December 19, 2014, she began work with "Hostess Brand Northern territory," and she "resigned" from that team in August 2015. In October 2015, she started work on the "Flex team," but "transferred to Impact due [to] low amount of assignments and release of a current unit manager." She worked with "Impact" and "Northwest" from May 2017 until September 10, 2017, leaving "due [to] no assignments scheduled for the time being an active employee returned for vacation."

¶ 6     The Board filed the administrative record, showing that DES notified Acosta of Spiridonova's claim for unemployment compensation on September 26, 2018. Acosta responded, asserting that Spiridonova resigned despite the continued availability of work. Acosta included a transcript of text messages between Spiridonova and her manager, Jeffery Brown. Spiridonova, who had taken a scheduled leave of absence, texted Brown on August 22, 2017, complaining that her schedule did not list any work hours. On August 31, Brown said that he was expecting her to return to work on September 15 and had not scheduled her for any work before then. Spiridonova responded, "It is not possible to wait a month for work." Brown wrote back that he had assigned her 23.5 hours of work in the week starting September 18, the Monday

after he had expected her to return. Spiridonova's response to that was, "I would like to leave, thanks a lot." Brown and Spiridonova then agreed that she would return her work tablet.

¶ 7 A DES adjudicator interviewed Spiridonova by telephone on October 12, 2017. According to DES, Spiridonova reported that she had taken leave from July 18, 2017, to August 14, 2017, but that Brown had mistakenly expected her to return on September 15, 2017. She said that she had asked for work starting upon her return, but that Brown would not schedule any work for her before September 15. She texted Brown to tell him that she "would not be able to be off the full month waiting for the 9/15/17 date."

¶ 8 The adjudicator concluded that Spiridonova voluntarily left her employment "because her hours were substantially changed, which caused an undue hardship." The adjudicator found that "[t]he employer had not schedule[d] her for work for a whole month, she had come back from vacation on 8/15/17. and the employer thought she would be back on 9/15/17." DES found in favor of Spiridonova:

> "Since the employer was aware of these conditions and had the ability to control the conditions or acts, the claimant's reason for leaving is attributable to the employer. These conditions or acts rendered the work unsuitable for the claimant; the voluntary leaving was with good cause."

¶ 9 Acosta appealed the determination to the appeals division. DES mailed notice to Spiridonova of a telephone hearing that was to take place on November 30, 2017, at 9:30 a.m. Spiridonova was told to expect a call to a number that she had provided within an hour of that time. DES sent the notice to 1378 Maroon Drive in Elgin, the address on file.

¶ 10 Spiridonova did not answer the call—someone answered and said that the caller had the wrong number. The referee from the appeals division took testimony only from Brown, who said

that Acosta had granted Spiridonova two months of leave. Brown's understanding was that she was going to Europe for a medical procedure and would need time to recover. She returned a month earlier than he expected and asked to work, and he told her that he could schedule hours for her. According to Brown, she responded, " 'No, I think I will pursue, um, other opportunities in the job market. I would like to quit and I can send you your tablet.' " Brown said that Spiridonova was confused and wrongly believed that she was going to have to wait a month to resume work. He said that he had given work to others because she was absent and that he "could have easily taken some of that work back and given it to her." When Brown offered Spiridonova hours, she said " 'No, I would rather look for another job. I quit.' "

¶ 11   The referee reversed the prior determination:

> "In this case, there was no testimony to rebut the employer's witness['s] firsthand testimony that the claimant left her job to pursue other job opportunities. The claimant left her job for personal reasons not attributable to the employer."

¶ 12   In response to the reversal, Spiridonova mailed DES a letter that it treated as a request for an appeal to the Board and a request to consider additional evidence. Spiridonova argued that she had cause for missing the telephone hearing. She also asserted that Brown was unable to provide the work that he said was available:

> "When I communicated with my current manager Jeff Brown, he always answered he has a lot of work for me, but never assignment me a certain location to perform any job duties. All the text messages from my side are available to confirm my statement."

She attempted to explain that her problem with insufficient work hours had existed throughout her employment:

"They were cutting off assignments prior to my vacation time as well. [Brown] responded the management want to create the new successful team, but nobody announced me and I applied to other positions at Acosta, they never hired me."

\* \* \*

"When I started the positon [*sic*] promised was with 15 hours and up part time and eventually more after some workers retire in the team. \*\*\* My hours were less than 10 a week, sometimes even hardly 8 weekly. I did not understand why the position was open. After all discussions with Jeff Brown, the last manager I worked with, this position was not open again, due to changes with team numbers in WalMart stores. He mentioned that they are planning to have a new team I can go to, but this never happened the way he promised to keep me posted. This confirms I was sent out without further notice. I did not have any hours for five weeks. \*\*\* [Brown] knew exactly when I was back to work with the company's permission. He did not schedule any hours for me at all. That was the first step to get me out of the work duties. He was talking that he has many hours for me, but that never appeared in the electronic system."

¶ 13 Spiridonova submitted screenshots of additional text message in which Brown explained that the company was having trouble reaching an agreement with Walmart that would give Acosta's employees work hours in Walmart stores.

¶ 14 Spiridonova did not mail her submissions to Acosta, so the Board declined to consider her additional arguments and evidence. The Board further concluded that Spiridonova had not stated good cause for missing the telephone hearing and it was therefore required to decide the matter solely on the existing record.

¶ 15    The Board affirmed the decision of the appeals division referee, concluding Spiridonova had quit voluntarily:

> "The claimant went on a leave of absence from July of 2017 until September 15, 2017.    The claimant never returned to work for the employer as the claimant wanted to pursue other job opportunities.
>
> ***
>
> The employment relationship ended when the claimant did not return to work on September 15, 2017. A failure to return to available work at the expiration of a leave of absence is a voluntary quitting."

¶ 16    On administrative review, the circuit court affirmed the Board's denial of benefits based on two findings:

> "1) That the conclusions of the Board of Review denying a rehearing and refusing to admit additional evidence are not clearly erroneous.
>
> 2) That the decision of the Board of Review denying benefits to the Plaintiff is not against the manifest weight of the evidence, and even if Plaintiff's evidence was considered would still not be against the manifest weight of the evidence."

¶ 17    Spiridonova filed a timely notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19    In an appeal that follows the circuit court's review of a decision by the Board, we review the final decision of the Board, not the referee's decision or referee or the circuit court's ruling. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22.   The issue before the Board was whether Spiridonova left work voluntarily without good cause attributable to her employer.   That is a mixed question of law and fact.   *Childress v. Department of Employment*

*Security*, 405 Ill. App. 3d 939, 942 (2010). Our review of such mixed questions is "under the 'clearly erroneous' standard, which is less deferential to the administrative agency than the manifest weight of the evidence standard." *Petrovic*, 2016 IL 118562, ¶ 21. "An agency's decision is clearly erroneous if, based on the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Petrovic*, 2016 IL 118562, ¶ 21.

¶ 20    We review the Board's decision on its merits despite deficiencies in Spiridonova's brief that, in other circumstances, might have led to a forfeiture. By our usual standards, Spiridonova has not sufficiently developed her arguments; we generally treat such arguments as forfeited. See *BMO Harris Bank N.A. v. Towers*, 2015 IL App (1st) 133351, ¶ 45 (noting that arguments inadequately presented on appeal are forfeited); see also *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987). However, because this appeal is effectively the third stage of review, the factual and legal issues are already clearly defined. Moreover, because the issues are clearly defined, the Board has been able to address those issues in full despite the shortcomings of Spiridonova's brief.

¶ 21    Spiridonova argues that her failure to answer the telephone to participate in the hearing before the referee was not within her control. We need not decide whether that is true. For the following reasons, we agree with the circuit court that, even if the Board had considered Spiridonova's additional evidence, it still would have affirmed the decision denying benefits.

¶ 22    DES originally found that Spiridonova voluntarily left her employment because her hours were substantially changed and that the change caused undue hardship. Under section 601(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (2016)), an "individual shall be ineligible for benefits for the week[, that is, in any week,] in which he or she left work voluntarily

without good cause attributable to the employing unit." Although a "substantial and unilateral *change* in employment may render employment unsuitable[,] so that good cause for voluntary termination is established," a claimant's mere dissatisfaction with the hours or wages of the job is not generally "good cause to leave for purposes of entitlement to unemployment compensation." (Emphasis added.) *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 772 (2001).

¶ 23 Spiridonova's new evidence suggested that she had always received fewer work hours than she wanted and that she had changed "teams" and applied for other jobs within Acosta because she wanted more work. The screenshots of the new text messages seem to show Brown explaining why he could not offer Spiridonova work hours upon her return from leave, but that work unavailability was part of a pattern. According Spiridonova, when she started at Acosta, she was promised at least 15 hours per week, with the expectation that her hours would increase later. But instead, she received only 8 or 10 hours per week. The work history Spiridonova to the circuit court makes this point even more strongly. She stated that she had started with the "Flex team" in October 2015 but transferred to "Impact" because of lack of work. Thus, the proposed new evidence showed that what the adjudicator called a "substantial[] change[]" in her hours part of a continuing pattern of a workload that Spiridonova deemed insufficient.

¶ 24 Brown testified to the referee that Spiridonova left despite being offered working hours immediately upon her return from leave. Based on that evidence the Board's ruling was not clearly erroneous in concluding that she left voluntarily without good cause attributable to Acosta. See 820 ILCS 405/601(A) (West 2016)).

¶ 25 Further, even if the Board had considered Spiridonova's additional evidence, it would merely have suggested that Spiridonova decided to quit because of ongoing dissatisfaction with

her hours and not because of substantial change to the conditions of her employment. Thus, as the circuit court ruled, even if it should have considered the additional evidence, the Board's decision was not clearly erroneous.

¶ 26    Spiridonova recently filed a motion in this court effectively asking us to consider evidence that was before neither the Board nor the circuit court. She wants Acosta to admit that it eliminated her position, and she wants this court to consider that admission. Documents that were not before the circuit court are not properly a part of the record on appeal and thus cannot be considered by the reviewing court. See, *e.g.*, *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 55 (2001) (our supreme court cannot consider evidence not before the circuit court). We cannot consider evidence that was not before the circuit court, and we deny the motion.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.