2024 IL App (2d) 230265
No. 2-23-0265
Opinion filed December 24, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| AUSTIN ROSZKOWIAK, as Trustee of the Diana Roszkowiak Revocable Trust, Dated March 16, 2017, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
|     Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-MR-624 |
| JASON ROSZKOWIAK, JEFFREY ROSZKOWIAK, GAVIN ROSZKOWIAK, TIMOTHY ROSZKOWIAK,  PEGGY KELTON, JENNIFER ELFERING,  WENDY FONK, BRANDON ROSZKOWIAK, QUINTIN ROSZKOWIAK, POLLY KLEIN JULIE TOCHOR, CHAD ROSZKOWIAK, and DEREK ROSZKOWIAK, | ) ) ) ) ) ) ) ) ) ) ) | |
|     Defendants | ) ) | |
| (Jason Roszkowiak, Polly Klein, Julie Tochor, and Quintin Roszkowiak, Defendants-Appellants; Jeffrey Roszkowiak, Gavin Roszkowiak, Timothy Roszkowiak, Peggy Kelton, Jennifer Elfering, Wendy Fonk, Brandon Roszkowiak, Chad Roszkowiak, and Derek Roszkowiak, Defendants-Appellees). | ) ) ) ) ) ) ) ) | Honorable Jorge L. Ortiz Judge, Presiding. |

_____

     JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
     Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal concerns an addendum to the Diana Roszkowiak revocable trust, dated March 16, 2017. Diana created the addendum to amend the trust distributing Diana's assets to her children, including those who objected to the addendum, Jason Roszkowiak, Polly Klein, Julie Tochor, and Quintin Roszkowiak. (For the reader's convenience, we refer to the objectors who have pursued this appeal simply as "defendants.")

¶ 2     After Diana passed, the addendum was challenged by defendants on the basis that it had not been "drafted" either by Diana as the trust's settlor or by a licensed attorney on her behalf. After a bench trial, the trial court found the addendum to be valid in that Diana dictated the addendum to her daughter Jennifer Elfering. There was also a video recording, made six days before Diana passed, of her reading aloud the addendum as an amendment to the trust. Following the court's ruling, defendants timely appealed. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4     The following facts are undisputed. Diana passed away in June 2020 at the age of 77. She was preceded in death by her husband of 51 years, Gerald, and was survived by 14 children and over 40 grandchildren.

¶ 5     During her life, Diana set up a revocable trust to manage and distribute her assets. She also made one amendment to the trust, which was largely funded with two pieces of real property: Diana's residence in Grayslake and a single-family home in Wausaukee, Wisconsin, which was primarily used for family vacations. The amended trust documents provided that each piece of property would be distributed to named groups of Diana's children for them to jointly own and maintain as a board of beneficiaries. Each beneficiary would have the right to purchase the property and the right of first refusal of sale. The trust documents also provided that Diana could amend her trust at any time, through a written instrument delivered to herself as trustee.

¶ 6    For context, we note that there was some evidence that Diana had been unhappy that prior trust documents had been taken from her home or examined without her permission. On June 10, 2020, Diana spoke to her daughter Wendy Fonk, on FaceTime, to notify her of a change in the trust to convey the Wausaukee property to Wendy upon Diana's death. On June 11, 2020, Diana asked Jennifer to type a second amendment to her trust, the addendum at issue. Diana presented Jennifer with a handwritten rough draft of the addendum and a tax bill to use for the legal description of the Wausaukee property. The proposed addendum removed the board of beneficiaries for the Wausaukee property and stated that the trust would convey the property to Wendy upon Diana's death. Jennifer typed as Diana spoke. According to Jennifer, she typed what her mother said "verbatim" and did not "stray from, alter, or add any changes" to her mother's dictation. Another sibling, Timothy Roszkowiak, witnessed the exchange. On June 11, 2020, Diana had the addendum notarized and delivered to her as trustee. On June 12, 2020, Diana gave the document to her youngest son, Austin Roszkowiak, who was the sole named successor trustee.

¶ 7    On June 14, 2020, Diana was scheduled for heart surgery the following day. In her hospital room, Diana made a video recording of herself reading the addendum aloud and affirming that those were her wishes as the trust's settlor. On June 21, 2020, Diana passed away.

¶ 8    After Diana passed, Austin filed suit as successor trustee, seeking a judicial construction of the trust. As part of the suit, defendants, who had been previously named to the board of beneficiaries, objected to the addendum. Austin sought a declaratory judgment stating that the addendum was valid.

¶ 9    Defendants maintained that, because Jennifer is not an attorney, her "drafting" the amendment was void, in violation of section 2BB of the Consumer Fraud and Deceptive Business Practices Act (Deceptive Practices Act) (815 ILCS 505/2BB (West 2020)), which requires that

only a licensed attorney may draft trust documents. The court denied defendants' motions to dismiss and motions for summary judgment. The court explained that the Deceptive Practices Act is not the exclusive resource for determining the validity of a trust's amendment. Rather, relying on the decisions, *Landheer v. Landheer*, 383 Ill. App. 3d 317 (2008), and *Herlehy v. Marie V. Bistersky Trust*, 407 Ill. App. 3d 878 (2010), the court determined that the common-law rule that a settlor can amend or revoke his or her own trust is a valid exception to section 2BB of the Deceptive Practices Act. The court also noted section 602(c)(1) of the Illinois Trust Code, which provides that a settlor may amend or revoke his or her own trust by, *inter alia*, "substantially complying with a method provided in the trust instrument." 760 ILCS 3/602(c)(1) (West 2020). The court determined that there was a disputed issue of fact as to Jennifer's role in the creation of the addendum, *i.e.*, whether she acted as a "mere scrivener" or had any personal contribution to its drafting.

¶ 10    At trial, Jennifer testified that she is not an attorney, has never held herself out to be an attorney, and typed only what her mother had stated. Timothy, Wendy, and Austin also testified to the sequence of events. The trial court found their testimony credible. In a memorandum opinion, the court explained that Jennifer's and Timothy's testimony about the creation of the addendum was unrebutted. The court found that the "process" of drafting the amendment—"which involved Jennifer listening to Diana's wishes and then typing them up into the document that would eventually become the [a]ddendum"—established Diana's role as its "true author." The parties had stipulated that Diana had the mental and physical capacity to prepare the addendum, and the court found evidence that Diana was familiar with the legal terminology necessary to effectuate such a "significant departure from [her] prior estate plans." Similarly, the court noted that Jennifer credibly testified she had not altered her mother's dictation and that the video recording was

conclusive proof of Diana's intent and wishes. The court found that the only contrary evidence—Jason's testimony that his mother was somehow unduly influenced—was vague and unpersuasive. After the judgment was entered, defendants appealed.

¶ 11                                                  II. ANALYSIS

¶ 12     On appeal, defendants maintain their position that there is no "scrivener's exception" to section 2BB of the Deceptive Practices Act. Defendants argue that the trial court erred in its understanding of *Landheer*, 383 Ill. App. 3d 317, and *Herlehy*, 407 Ill. App. 3d 878. Defendants do not challenge the court's factual findings after trial; instead, they maintain that they were entitled to summary judgment as a matter of law and that the court erred by not dismissing Austin's claim on the addendum's validity. We affirm.

¶ 13     We begin with section 2BB of the Deceptive Practices Act. This section provides, in pertinent part, that "[t]he assembly, drafting, execution, and funding of a living trust document or any of those acts by a corporation or a nonlawyer is an unlawful practice within the meaning of this Act." 815 ILCS 505/2BB (West 2020). As the *Landheer* court noted, section 2BB "expressly prohibits the assembly, drafting, execution, and funding of a living trust document by a nonlawyer." *Landheer*, 383 Ill. App. 3d at 321.

¶ 14     In *Landheer*, the trial court dismissed a claim to construe a purported addendum, but the circumstances were much different. There, a son claimed to have acted only as a "scrivener" for his father in the creation of the document. *Id.* at 322. However, the son's deposition testimony established that he "listened to his father's concerns, decided upon the appropriate language to put into the disputed document, and even added provisions that [the son] thought would be important, such as appointing himself sole executor of the estate." *Id.* The court determined that the disputed document was indeed drafted by the son, a nonlawyer, in violation of section 2BB. *Id.*

¶ 15    While *Landheer* presents an otherwise straightforward application of section 2BB, a portion of that decision holds that section 2BB did not abolish the well-established rule that a settlor can amend his or her own trust. The court explained:

    "In finding that section 2BB of the Act prohibits a nonlawyer from drafting an amendment to a living trust for another person, we note, however, that the statute does not prohibit an individual from preparing his own living trust documents, even if that individual is not an attorney. To rule to the contrary *** would be to ignore the entire purpose of the [Deceptive Practices] Act, which is to protect consumers from fraud and deceptive business practices. [Citation.] The prohibition contained in section 2BB must be interpreted in light of the purpose of the statute. [Citation.] There is nothing about a person drafting his or her own living trust documents that would give rise to a claim of fraud or deceptive business practices." *Id.* at 321-22.

¶ 16    Two years later, the decision in *Herlehy*, 407 Ill. App. 3d 878, represented another basic application of section 2BB. There, the plaintiffs sought to benefit from a disputed amendment, which adopted an investment recommendation form prepared by a securities broker to reallocate the trust's assets. *Id.* at 887, 893. The trial court determined that the broker could not have acted as a "scrivener" at all (much less a "mere scrivener"); the broker merely prepared the form as part of an analysis of the settlor's investments and never actually spoke to the settlor. *Id.* at 887.

¶ 17    With *Landheer* and *Herlehy* in mind, we return to the case at hand. Key to distinguishing this case from those decisions is that the *complaint* in this case alleged that Jennifer was a nonlawyer who had no authorial contribution to the document she typed. This allegation indicated that there was a cognizable claim, such that defendants could not entirely defeat the claim at the pleading stage. Then, at the summary judgment stage, the trial court determined that there was a

material factual issue about Jennifer's role. Defendants do not dispute those points beyond merely asserting that they should have prevailed *prior* to any trial. We are not persuaded.

¶ 18     As *Landheer* makes clear, section 2BB does not prevent a settlor from amending or revoking his or her own trust. See 760 ILCS 3/602(c)(1) (West 2020). Whether the term scrivener, typist, or recorder is used, we determine, like the trial court, that a settlor may amend or revoke his or her own trust using the aid of an individual who acts entirely and only at the settlor's direction. We further agree with the *Landheer* court that, where the evidence shows that the settlor is the document's true author, it would not protect consumers from deceptive business practices to exclude the settlor's own words. See *Landheer*, 383 Ill. App. 3d at 322. Although defendants do not challenge the verdict, the unrebutted evidence showed that Diana directed Jennifer's actions and then had the document notarized and delivered. What is more, the video recording removed all doubt regarding Diana's wishes, her state of mind, and her intent to amend the trust. Thus, we agree with the trial court that there was substantial compliance with the trust's requirements, making the addendum effective.

¶ 19                                III. CONCLUSION

¶ 20     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 21     Affirmed.

*Roszkowiak v. Roszkowiak*, **2024 IL App (2d) 230265**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 20-MR-624; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey P. O'Kelley, of Lesser Lutrey Pasquesi & Howe, LLP, of Lake Forest, for appellants. |
| **Attorneys for Appellee:** | Jonathan D. Morton and Toni F. Esparza, of Golan Christie Taglia LLP, of Chicago, for appellee Austin Roszkowiak. |
| | Amanda M. Zannoni and Heather L. Kramer, of Rathje Woodward LLC, of Wheaton, for appellees Jeffrey Roszkowiak, Gavin Roszkowiak, Jennifer Elfering, Wendy Fonk, and Brandon Roszkowiak. |
| | No brief filed for other appellees. |